## James v. James et al.

(Decided Nov. 11, 1938.)

R. C. TARTAR for appellant.

B. J. BETHURUM for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant and defendant below, James E. James, Sr., is the father of James E. James, Jr., the latter of whom married one of the plaintiffs below, and an appellee here, Lottie L. James, sometime prior to 1920, and to whom there were born three children, the appellees and plaintiffs below, David James, Mary James and John James. In February 1920 the son agreed to purchase a farm in Pulaski county consisting of two separately bounded tracts lying contiguous to each other, at the price of $6,500. The deed was executed jointly to the son and his wife (the plaintiff Lottie L. James) but neither of them paid one farthing on the consideration—the down payment of $2,100 being paid by defendant, James E. James, Sr. A similar amount was agreed to be paid by the father of

Lottie James, but he did no more than sign his son-in-law's note to the seller of the farm for that amount. The unpaid consideration was evidenced by notes of James E. James, Jr., with his father-in-law, and, perhaps, his father as sureties. The father (appellant) also simultaneously with the purchase of the farm advanced to his son about $750 with which to equip the farm with necessary tools and work beasts. He also paid some of the unpaid purchase money notes following the execution of the deed as they became due and as he was able to do, and likewise paid for his son a number of other obligations which the latter had executed to banks in various borrowing transactions made by him.

Prior to September 25, 1922—and after the birth of their three children—the son and his wife separated, the former moving to the state of Illinois leaving his wife and children upon the farm so purchased. On the day stated the son conveyed to the appellant, his father, all of his interest in the two separate tracts in consideration of the amounts the appellant had already paid on the purchase money, and in consideration of his agreement to pay the balance thereof—$500 of which was in consideration of the third separate tract described in the deed and composing a part of the farm, the title to which had been taken to the son alone in a deed executed to him after the purchase in January 1920. The appellee Lottie James did not join her husband in that deed. Later, however, and on November 7, 1922, she executed her deed to the appelant conveying "all her right, title and interest in and to the said lands embraced in the said deed from James E. James, Jr. to the party of the second part, * * * to have and to hold the property hereby conveyed unto the party of the second part and his heirs and assigned forever with covenant of general warranty." But there was inserted where the asterisks appear this language: "It being understood and agreed that the lands are to be sold by the said James E. James, Sr., and after the re-imbursement of the said James E. James of the sums so paid and to be paid by him, then out of the remainder if any the debts of the said James E. James Jr. are to be paid and the residue remaining if any to be divided equally between the party of the second part (appellant) and the said James E. James, Jr."

That language would appear to create a trust in

and to a very remote possible remainder of proceeds of the lands when sold by appellant. That deed was executed—as is expressly stated therein "in consideration of the fact that the party of the second part has paid for the parties of the first part in this conveyance and in the conveyance by the said James E. James, Jr., a material part of the purchase price of the said lands in the payment of notes executed for the same, and whereas there are other notes due and are a lien for part of the purchase money on the said lands, which the party of the second part hereby assumes and agrees to pay." All of the deeds mentioned were recorded. Before June 5, 1926, the son and his wife were divorced. Prior thereto and following such conveyances appellant endeavored to borrow some cash to meet his obligations (he having spent for the use and benefit of his son about $9,600 all told), and the one to whom he applied discovered the trust language supra—contained in the deed of the plaintiff and appellee Lottie James to appellant of date November 7, 1922—and expressed doubts as to the marketability of the title of defendant, who was the applicant for the loan and who offered to mortgage the land to secure it. To remove that doubt he applied to appellee, the then divorced wife of his son, to execute another paper eliminating the objections so raised. She consented thereto, but demanded as a condition precedent the execution of appellant's note to her for the sum of $1,000 payable ten years thereafter without interest, and for the exclusive benefit of her three children who were then infants. The note was so executed by appellant on June 5, 1926, being the date of the second deed made by the divorced wife of his son, in which deed she conveyed to appellant all her interest in the land described in her husband's prior deed, absolutely and free from any trust obligation.

On September 5, 1936, three months after that note became due, according to its terms, she and her three children who were the beneficiaries in its proceeds filed this action against defendant to recover the face value of the note. He defended on the ground (a) of no consideration, and (b) that it was executed by mutual mistake of the parties of both law and fact. In the meantime the farm conveyed by the respective deeds was sold by defendant at its market price for a sum slightly

above half of the original purchase price of $6,500, and about $6,000 less than the son's entire indebtedness to his father. A trial of the issues before a jury resulted —under the instructions of the court—in a verdict in favor of plaintiffs for the face value of the note, upon which judgment was rendered. Defendant's motion for a new trial was overruled and he prosecutes this appeal.

Various grounds were set out in the motion for a new trial as supposed reversible errors, one of which was the refusal of the court to sustain defendant's motion for a directed verdict in his favor, but which the court overruled. Another one was directed to complaints of the instructions given by the court to the jury, which we think is well taken, but since we have concluded that the peremptory instruction asked for by defendant's counsel should have been given it becomes unnecessary to mention the defects in the instructions or to devote any time to their discussion. The request for a directed verdict in favor of defendant was based upon the two defenses (a) and (b) supra, that the note was without consideration, and that it was executed through mutual mistake of the parties. We shall direct our opinion exclusively to a discussion of defense (a), since we have determined that it is well taken.

To begin with, neither of the vendees (James E. James, Jr., and wife) to whom the farm was conveyed ever paid one copper on its purchase price. The only one who ever did so was the appellant. Such facts, however, are not alone sufficient—nor, possibly, are they legally relevant to the inquiry of consideration or no consideration for the note sued on—and we mention them only to show the barrenness of any equity possessed by appellees in demanding payment of it by appellant. In the deed executed by Mrs. James E. James, Jr., of date November 7, 1922, she qualified the otherwise absolute conveyance therein made by creating a contingent trust in favor of her divorced husband in and to one-half of the remainder of the proceeds of the farm upon a sale thereof by the vendee therein, the latter (appellant) becoming the recipient of the other half of such remote balance of purchase money. So that, the only third person having any such remote interest in such proceeds was the divorced

husband of the grantee in that deed. No interest whatever was retained by her, either legal or equitable. Therefore, at the time she executed her later deed to appellant—and in consideration of which he executed the note sued on—she possessed no title, legal or equitable, to any of the funds (contingent or otherwise) growing out of the trust she attempted to create by her first deed. She was the settlor of that trust and in her deed creating it she parted with all interest in the subject matter thereof.

In volume 1, section 42, of Bogert's Trust and Trustees (there being seven volumes) 1935 edition, it is said: "Ordinarily the settlor of a trust in which the fee or absolute interest is granted has no interest in the trust property after the complete creation of the trust. He is as much a stranger to that property as a third person who has had no connection with it. * * * Nor is it the right of the settlor to obtain the enforcement of the trust. Its enforcement will not make him a penny richer. Equity will give aid to such enforcement only on the application of the trustee or a cestui que trust." Numerous cases cited in the notes to that text fully sustain it. Therefore, following the execution of the note sued on—which was the time Lottie James executed her second deed to appellant—she possessed no interest whatever in and to the land previously conveyed by her, either individually or as settlor in the trust created by her first deed to him. That deed emptied the cupboard and made it bare so far as she or her children were concerned—leaving nothing for her to sell or otherwise part with thereafter. Therefore, her last deed did not destroy or impair that trust in favor of her divorced husband in the least—he not being a party thereto—nor is there anything in the record to show that he even consented thereto. Her deed was barren of any effect. So that, appellant as vendee in the second deed of Lottie L. James, obtained nothing whatever by its execution—not even the removal of the doubt raised by his prospective lender—and from which it follows that his note sought to be enforced by this action purchased for him no relief whatever, nor did the deed executed therefor convey to him any interest whatever of any person whomsoever. Regardless of the more or less entanglements of the law concerning what is or what is not a sufficient consideration to sup-

port a contract, no opinion nor any text writer has had the temerity to declare that the situation above described fulfills the requirement that an enforceable obligation must be supported by a sufficient consideration. There was no parol testimony offered or heard to modify or qualify the situation made apparent by the face of the writings involved. It is, therefore, clear that the court erred in overruling defendant's motion for a directed verdict in his favor.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside, and for proceedings consistent with this opinion; the Whole Court sitting.