ST. PAUL SURPLUS LINES
INSURANCE COMPANY,
INC., Petitioner,

v.

DAL–WORTH TANK COMPANY,
INC., et al., Respondents.

No. 96–0148.

Supreme Court of Texas.

Aug. 25, 1998.

PER CURIAM.

The parties' motions for rehearing are overruled. We withdraw our per curiam opinion issued February 13, 1998, and substitute the following in its place.

Of the numerous issues raised by all parties in this case, we address only whether the court of appeals erred in its rulings concerning a Mary Carter agreement, damages for loss of credit reputation, whether defendant acted knowingly, prejudgment interest, and attorney fees. We affirm in part, reverse in part, and remand the case to the court of appeals.

The facts are fully set out in the court of appeals' opinion, 917 S.W.2d 29, 36–40, and we summarize them only as necessary to place the issues before us in context.

Dal–Worth Tank Co. received notice from one of its customers, Mission Butane Gas Co., that Mission intended to sue for several thousand dollars in damages caused when trucks it had bought from Dal–Worth had rolled over. Dal–Worth sent the notice to its insurer, St. Paul Surplus Lines Insurance Co., who opened a claim file. Mission's insurer also notified St. Paul of Mission's intention to sue Dal–Worth if Mission's claim was not satisfied. After discussing the claim with Dal–Worth, St. Paul concluded that Dal–Worth was not liable and refused to pay.

Mission then sued Dal–Worth. There is evidence that the suit papers were forwarded to St. Paul, although St. Paul disputed having received them. St. Paul heard conflicting accounts from Mission's insurer's employees about whether Mission had filed suit but concluded suit had not been filed. Even after Dal–Worth called St. Paul to ask about "the suit", St. Paul did not inquire whether suit had actually been filed.

Dal–Worth did not answer Mission's suit, and eventually Mission obtained a default judgment against Dal–Worth for $794,100. Dal–Worth received notice of the judgment from the court but did not realize its significance and did not send it to St. Paul. St. Paul first learned of the judgment seventy-eight days after it was signed and decided to determine whether it was covered by the policy before initiating a writ of error appeal. St. Paul advised Dal–Worth of the existence of the judgment but did not say that it was exploring coverage issues. Mission would have settled the case at this point for $17,000, but neither Mission, Dal–Worth, nor St. Paul made any settlement overtures.

Four weeks later St. Paul denied coverage but offered to pay an attorney of Dal–Worth's choice to appeal by writ of error. Dal–Worth accepted the offer and appealed, but when St. Paul would not supersede the judgment, Dal–Worth was forced into bankruptcy.

Dal–Worth then sued two insurance agents with whom it had dealt, later adding St. Paul as a defendant. Meanwhile, Dal–Worth settled with Mission for dismissal of the appeal, $50,000 cash, $25,000 credit, ninety percent of up to $2 million of any recovery by Dal–Worth against St. Paul, and fifty percent of any recovery over $2 million. Mission then joined Dal–Worth in its suit. Dal–Worth and Mission also settled with one of the agents, Shaffer, for about $500,000, to be repaid out of any recovery against St. Paul.

The district court rendered judgment on a verdict for Dal–Worth and Mission finding liability under the Deceptive Trade Practices Act and the Insurance Code, and for negligence. The judgment awarded Dal–Worth and Mission $331,750.00 past lost profits, $2,160,000.00 future lost profits, $25,000.00 bankruptcy attorney fees, $507,000.00 increased business costs, $500,000.00 lost credit reputation, $607,921.49 prejudgment interest, $1,117,219.30 due on the Mission judgment, $2,000,000.00 statutory damages under the DTPA, $10,497,781.00 statutory damages under the Insurance Code, and $11,500,000.00 punitive damages for gross negligence. The judgment also awarded forty percent of the

total judgment as attorney fees on the statutory claims, which were calculated to be $6,767,429.60 under the DTPA and $10,497,781.00 under the Insurance Code, but did not award attorney fees on the negligence claim. Dal–Worth and Mission elected to recover under the Insurance Code because it provided the largest judgment: $26,244,352.79. (Actually, as the court of appeals noted, 917 S.W.2d at 40 n. 7, the awards total $26,244,452.79, but Dal–Worth has not complained of the error.)

St. Paul appealed. The court of appeals reversed the award of future lost profits, affirmed the rest of the judgment, and remanded the case for recalculation of the total award. 917 S.W.2d at 64. All parties appealed to this Court, raising numerous complaints. We address only those as to which the court of appeals erred.

■ *The Mary Carter agreement.* St. Paul argues that the Shaffer settlement was a Mary Carter agreement prohibited under *Elbaor v. Smith,* 845 S.W.2d 240 (Tex.1992). The court of appeals incorrectly held that St. Paul preserved this complaint by raising it in its motion for new trial. The court reasoned that because *Elbaor* was not decided until after the verdict was returned (but before judgment was rendered), St. Paul could not have objected earlier. 917 S.W.2d at 43–44. But the fact that *Elbaor* had not been decided did not relieve St. Paul of its obligation to timely object to the effect of the Shaffer agreement on the trial any more than it relieved the defendant in *Elbaor* from objecting. Even though *Elbaor* was not yet the law, St. Paul was obliged to lodge a timely objection to preserve error. *See General Chem. Corp. v. De La Lastra,* 852 S.W.2d 916, 921 (Tex.), *cert. dism'd,* 510 U.S. 985, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993). We specifically held in *Elbaor* that the rule announced would apply only to pending cases "where error has been preserved". *Elbaor,* 845 S.W.2d at 251. In this case St. Paul did not preserve error because it failed to object at trial to the Shaffer agreement. We disapprove of the court of appeals' contrary conclusion and thus need not consider whether the Shaffer agreement was indeed a Mary Carter agreement and if so whether its effect

on the trial was or could have been harmless error.

■ *Loss of credit reputation.* St. Paul argues that there is no evidence to support an award for loss of Dal–Worth's credit reputation, and we agree. "To prove that credit rating is harmed is to prove nominal damages; not until a loan is actually denied or a higher interest rate charged is there proof of actual damages which may be compensated." LAWRENCE A. CUNNINGHAM, 5 CORBIN ON CONTRACTS § 1007 (Supp.1998). While Professor Cunningham suggests that this rule may not apply in tort cases, *see id.,* we believe that it should. Regardless of whether an action sounds in contract or tort, a plaintiff does not suffer actual damage merely from the inability to obtain a loan. There must be a showing that such inability resulted in injury and proof of the amount of that injury. Here, it is undisputed that Dal–Worth had strong credit before filing for bankruptcy, perhaps as much as $2.75 million, and weak credit afterwards, maybe as little as $250,000. But there is no evidence that the decline injured Dal–Worth in any way because Dal–Worth never needed to use the credit and never tried to do so. Indeed, Dal–Worth prided itself on not having borrowed money for more than a decade. There is evidence that Dal–Worth's vendors insisted on payment in advance, resulting in increased costs to Dal–Worth. While this is a compensable injury, Dal–Worth characterized this loss as "increased business costs," for which it recovered damages under a separate jury issue. Under these circumstances, this evidence cannot also support the jury's award of lost credit reputation. The award of $500,000 to Dal–Worth for lost credit reputation must therefore be reversed.

■ *Whether St. Paul acted knowingly.* St. Paul argues that there is no evidence that it acted knowingly, and again, we agree. "Knowingly", as the district court correctly charged the jury, means actual awareness of the falsity, deception, or unfairness of the conduct in question. "[A]ctual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness." TEX. BUS. & COM.CODE § 17.45(9). "Actual awareness" does not

mean merely that a person knows what he is doing; rather, it means that a person knows that what he is doing is false, deceptive, or unfair. In other words, a person must think to himself at some point, "Yes, I know this is false, deceptive, or unfair to him, but I'm going to do it anyway."

In *Luna v. North Star Dodge Sales, Inc.,* 667 S.W.2d 115, 118 (Tex.1984), we said:

> If a person commits a wrongful act with actual awareness of the falsity, deception or unfairness of the act, then this is a more culpable mental state than one who is grossly negligent. We are not attempting to equate the terms gross negligence, "knowingly," "willful" and intentional. These terms lie on a continuum with gross negligence being the lowest mental state and intentional being the highest.

At the time, gross negligence was defined as "an 'entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it.'" *Id.* at 117–118 (quoting *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 920 (Tex.1981)). Thus, we held that "actual awareness" is more than conscious indifference to another's rights or welfare. (Of course, the standard for recovery of exemplary damages, which was gross negligence when *Luna* was decided, has since been raised. *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 19–23 (Tex.1994); Tex. Civ. Prac. & Rem.Code §§ 41.001(5)-(7), 41.003.)

There is evidence that St. Paul acted negligently and in violation of the DTPA and the Insurance Code, but there is no evidence that St. Paul was actually aware that its actions toward Dal–Worth were false, deceptive, or unfair—that is, that St. Paul was more than consciously indifferent to Dal–Worth's rights and welfare. St. Paul did not do all it should have done to determine whether Dal–Worth had been sued, but this is only evidence of negligence; it is no evidence that St. Paul *knew* it was harming Dal–Worth. There is evidence that St. Paul received the suit papers, as the jury found it did, but there is no evidence that St. Paul *knew* it had the suit papers.

Dal–Worth contends that St. Paul's four-week delay after learning of the judgment in order to obtain an opinion on coverage also evidences a knowing violation. Dal–Worth argues that by delaying St. Paul lost the chance to move for an extension of post-trial deadlines on the grounds that Dal–Worth did not receive timely notice of the default judgment. Tex.R. Civ. P. 306a. While it is undisputed that the trial court sent notice of the default judgment to Dal–Worth, Dal–Worth contends that a Rule 306a motion may have been successful because the notice was initially sent to the wrong address and because there was no clear evidence about when Dal–Worth received it. Also, there is evidence that, had St. Paul immediately pursued relief under Rule 306a, Mission would have agreed to set aside the default judgment. There is no evidence, however, that St. Paul was actually aware that a Rule 306a motion would be successful, or even that it knew of a good faith basis for pursuing such a motion. Under these circumstances, St. Paul's delay does not constitute evidence that it acted knowingly.

In sum, there is evidence of misconduct by St. Paul, but there is no evidence, circumstantial or otherwise, that St. Paul *knew* it was acting falsely, deceptively, or unfairly toward Dal–Worth. The award of statutory damages under the DTPA and the Insurance Code must therefore be reversed.

▮ *Prejudgment interest.* The trial court erred in computing prejudgment interest at the rate of ten percent per annum, compounded. *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 532 (Tex.1998). The trial court also erred in trebling prejudgment interest. In *Vail v. Texas Farm Bureau Mut. Ins. Co.,* 754 S.W.2d 129, 137 (Tex.1988), we held that prejudgment interest should not be calculated on trebled damages. In the present case, the court of appeals reasoned that calculating prejudgment interest on the actual damages and then trebling the total did not do what *Vail* proscribed. But this reasoning is mathematically flawed. Trebling the sum of damages and interest is equal to the sum of treble damages and treble interest: in other words, $3(D + I) = 3D + 3I$. Prejudgment

interest should be awarded on actual damages at the rate of ten percent per annum, computed as simple interest, and should not be trebled.

*Attorney fees.* Without objection, the district court asked the jury to find attorney fees as a percentage of "recovery". The jury found forty percent. St. Paul complained in the court of appeals that attorney fees should be forty percent of the damages found by the jury, not forty percent of the total judgment. The court of appeals clearly rejected St. Paul's argument, stating that "Dal–Worth was entitled to 40% of the sum of its actual damages, prejudgment interest thereon, and statutory trebling of the actual damages." 917 S.W.2d at 63. Because the appeals court then added that Dal–Worth's points of error must be sustained "[t]o the extent that there must be a recalculation of the attorney's fees because of the recomputation of damages," 917 S.W.2d at 64, Dal–Worth complains to us that the court of appeals accepted St. Paul's argument. Plainly it did not. The court of appeals reversed the award of attorney fees only because fees were required to be recalculated after the court's reversal of the award of future lost profits reducing the amount of the judgment. With this understanding, we affirm this part of the appeals court's decision.

\* \* \* \* \*

Because our rulings and those of the court of appeals have reduced Dal–Worth's recovery under the DTPA and the Insurance Code, Dal–Worth may elect to recover instead for negligence. However, St. Paul complains that there is no evidence to support an award of exemplary damages for negligence, and that the award made by the jury was excessive. The court of appeals did not address these complaints because Dal–Worth had elected to recover under the Insurance Code. Now that the damages awarded for negligence exceed those affirmed under the statutory causes of action, the court of appeals must address these complaints. In the event Dal–Worth should advise that court that it continues to elect to recover under the Insurance Code, then the appeals court would not be obliged to address the

other points and could then remand the case to the district court to recalculate damages due for the Insurance Code violations.

Accordingly, the Court grants St. Paul's and Dal–Worth's applications for writ of error and, without hearing oral argument: reverses the court of appeals' judgment awarding damages for loss of credit reputation, statutory damages under the DTPA, and treble damages under the Insurance Code, and renders judgment that Dal–Worth not recover such damages; reverses the court of appeals' judgment awarding prejudgment interest; affirms the court of appeals' judgment in all other respects; and remands the case to the court of appeals for consideration of St. Paul's complaints concerning the award of punitive damages, and if appropriate, for remand thereafter to the district court for rendition of judgment.