TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00717-CV






James D. Moore d/b/a Color Tile and Carpet, Appellant



v.



Colleen Neuharth, Appellee







FROM THE COUNTY COURT AT LAW NO. 2 OF WILLIAMSON COUNTY, 

NO. 3916, HONORABLE ROBERT MORSE, JUDGE PRESIDING 





 Appellee Colleen Neuharth sued appellant James D. Moore d/b/a Color Tile and
Carpet ("Color Tile") for violations of the Texas Deceptive Trade Practices-Consumer Protection
Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 1987 & Supp. 1999), related to
the installation of flooring in Neuharth's home. Following a bench trial, the trial court rendered
judgment in favor of Neuharth, awarding her actual damages, trebled for Moore's "knowing"
violation of the DTPA. We will affirm.


FACTUAL AND PROCEDURAL BACKGROUND



 Neuharth contacted the Round Rock, Texas location of Color Tile inquiring about
replacing water-damaged flooring in her home. Fred Fogarty, then the manager of that location,
inspected Neuharth's home and gave her an estimate of $4,221.60 to replace all the carpet and
carpet padding in the home, re-stain damaged baseboards, and install pergo flooring on top of the
existing ceramic title. Neuharth accepted this bid.

 After much of the work had been completed, Neuharth expressed her dissatisfaction
with the flooring installation. For a few months following Neuharth's initial complaint, some
efforts were made to repair the problems; however, the parties could not agree on the extent of
the restoration work needed. Eventually, Neuharth was offered a full refund, provided she would
return the carpeting installed in her home. Because Color Tile had already taken away all of her
old carpeting, Neuharth rejected this offer. She was then contacted by Joel Prate, who identified
himself as the new Color Tile manager replacing Fogarty. Prate examined the flooring in the
home, offered in writing to waive the remaining $1,500 balance owed by Neuharth, and committed
to certain repairs. Nevertheless, an agreement still could not be reached between the parties.

 Neuharth subsequently filed suit alleging breach of contract, breach of warranty,
and violations of the DTPA, complaining of the following: the carpet padding in the master bed
and bathroom was not replaced, even though she was charged for new padding; the carpet was
improperly installed, showing seams in the middle of the living room and master bedroom; the
carpet padding in the living room was pieced together and had holes in it; some carpet was
"floating" because it had not been tacked into place; rotted tack boards were not replaced;
transition strips were not used, causing significant height differences between the pergo flooring
and the other flooring; and the pergo flooring warped due to incorrect installation.

 The case was tried without a jury, and the trial court rendered judgment for
Neuharth on her DTPA claims, awarding actual damages in the amount of $4,221.60, trebled for
a knowing violation of the DTPA, plus attorney's fees, interest, and costs of court.

DISCUSSION



 In four points of error, Moore complains that: (1) the evidence is legally and
factually insufficient to support the finding that his actions were committed knowingly; (2) the
evidence is legally and factually insufficient to support a finding of any amount of actual damages;
(3) the trial court erred in allowing Neuharth's neighbor to testify regarding the statements of a
Color Tile employee; and (4) the trial court erred in allowing Neuharth to testify as to her opinion
of the estimated cost of her repairs.


Actual Damages


 In his second point of error, Moore argues that the evidence is legally and factually
insufficient to support the award of actual damages. In deciding a no-evidence point, we must
consider all the evidence and inferences in the light most favorable to the finding of the trier of
fact. See Associated Indemnity Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 285-86 (Tex.
1998). See generally William Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and
"Insufficient Evidence," 69 Tex. L. Rev. 515 (1991). In contrast, when determining the factual
sufficiency of the evidence, we must consider and weigh all the evidence equally and should set
aside the judgment only if the evidence is so weak, or the judgment so contrary to the
overwhelming weight of the evidence, as to make the judgment clearly wrong and unjust. See
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re Estate of King, 244 S.W.2d 660, 661 (Tex.
1951); see also Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986). See generally Powers &
Ratliff, supra, 69 Tex. L. Rev. 515 (1991).

 Neuharth testified that after she and Fogarty were unable to reach an agreement
regarding her complaints, she was contacted by Joel Prate, who indicated he was the new manager
of Color Tile. Prate agreed to inspect the flooring and installation in her home. Neuharth testified
that Prate was "shocked" by the poor quality of the work, that he readily agreed to fix all the
problems she had alerted him to, and that he further offered to waive the remaining $1,500 balance
she owed to Color Tile. Prate later recanted, stating that Color Tile was willing to do some minor
repairs, but to address all the problems would take a complete replacement of all the flooring in
the entire house, and the owner (Moore) was not willing to incur that expense.

 The trial court found that $4,221.60 would fairly and reasonably compensate
Neuharth for the damages caused by Moore's unlawful acts. This amount mirrors the amount of
Color Tile's estimate to replace all the flooring in the home. Neuharth testified that Prate admitted
that the flooring in the entire home would need to be replaced in order to properly address the
poor installation. We believe that Neuharth's testimony, coupled with the original bid by Color
Tile in that amount, constituted more than a scintilla of evidence to support the award of actual
damages in the amount of $4,221.60. In fact, given the evidence that the flooring throughout the
home needed to be replaced, it was entirely logical for the trial court to use Color Tile's bid to
assess the amount of damages. Accordingly, we hold that the evidence was legally sufficient to
support the trial court's finding.

 We also conclude that the evidence was factually sufficient to support the actual
damages award. While Moore did offer the testimony of a four-and-a-half year employee of Color
Tile as an expert witness to refute the necessity of replacing all the flooring in Neuharth's home,
the trial court, as the trier of fact, was the judge of the credibility of the witnesses, was free to
believe one witness and disbelieve the other, and could accept lay testimony over that of an expert. 
See, e.g., Kirby v. Chapman, 917 S.W.2d 902, 912 (Tex. App.--Fort Worth 1996, no writ). We
do not find the evidence so weak as to make the trial court's judgment clearly wrong and unjust. 
Accordingly, we hold that the evidence was factually sufficient to support the trial court's actual
damages award.


Objections To Testimony


 In his fourth point of error, Moore asserts that the trial court improperly allowed 
Neuharth to give her opinion of the estimated cost of her repairs. Neuharth testified that, prior
to contacting Color Tile, she had received from her insurance company an estimate of $4,500 to
replace the water-damaged flooring in her home. Counsel for Moore objected to this testimony,
complaining that it was hearsay and that Neuharth, as a lay witness, was incompetent to give her
opinion as to repair costs. The trial court allowed the testimony over the objection.

 In his third point of error, Moore asserts that the trial court erred in allowing the
testimony of Alycs Macis, a neighbor and friend of Neuharth. Macis testified that she contacted
"Dutch," a Color Tile employee, and told him she was interested in purchasing Neuharth's home
and wanted an estimate for any needed repairs to the flooring. She did not mention the ongoing
dispute between Neuharth and Color Tile. After inspecting Neuharth's house, Dutch indicated to
Macis that the flooring installation was the worst job he had seen in his thirty-nine years in the
business and needed to be replaced at a cost equal to that of the original installation. Moore
objected to Macis's testimony on the ground that it was obtained by fraud and deception. (1)

 Moore asserts that without the testimony of Neuharth concerning the insurance
estimate and the testimony of Macis relating Dutch's statements, there is no evidence to show the
cost of replacing the flooring; therefore, there is no evidence supporting an award of $4,221.60
in actual damages. (2) We have already determined that the evidence was both factually and legally
sufficient to uphold the trial court's actual damages award based on Neuharth's testimony as to
Prate's statements. Accordingly, even assuming the trial court improperly admitted the objected-to
testimony, we would still uphold the actual damages award based on other evidence. We therefore
need not address whether the objected-to testimony should have been excluded.


"Knowing" Violation 


 Section 17.50(b)(1) of the DTPA allows trebling of all actual damages if the trier
of fact finds that the defendant violated the DTPA "knowingly." See DTPA § 17.50(b)(1). In his
first point of error, Moore complains that the evidence is legally or factually insufficient to support
the trial court's finding of a knowing violation of the DTPA. We disagree.

 The Texas Supreme Court recently held that a knowing violation occurs when the
offending party has "actual awareness" of the deception:


"Actual awareness" does not mean merely that a person knows what he is doing;
rather, it means that a person knows that what he is doing is false, deceptive, or
unfair. In other words, a person must think to himself at some point, "Yes, I know
this is false, deceptive, or unfair to him, but I'm going to do it anyway."



St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co., 974 S.W.2d 51, 53-54 (Tex. 1998).


 Our review of the record in the present case reveals ample evidence of a knowing
violation. The most flagrant of this evidence involves the replacement of the carpeting in
Neuharth's master bedroom. It is undisputed that Color Tile's estimate included the re-carpeting
of the entire home, including the replacement of the padding underneath the carpet. On the day
the carpeting was installed, Neuharth remembered Fogarty mentioning that the installers were
running low on padding. After the installation was completed, Neuharth noticed a difference
between the carpeting in the master bedroom and that in the living room. She removed the
carpeting from a corner of her bedroom and discovered that new carpet had been laid over her old
padding, even though she had been charged for new padding. Neuharth testified that when she
complained to Fogarty, he admitted he was aware the old padding had not been replaced. He told
her the installers decided it would be better to install the new carpet over the old pad rather than
do nothing at all. Furthermore, Moore's responses to Neuharth's requests for admissions admit
the carpet padding was not replaced in the master bedroom. This evidence is sufficient to support
a finding of a knowing violation of the DTPA. There is no dispute that Neuharth was charged for
new padding, that the padding was not replaced, that this deception was known, but was done
anyway.

 Moreover, this was not the only evidence of a knowing violation. Neuharth
testified that Prate admitted to her that the flooring installation was completely unacceptable, and
promised to "make it right." He later refused to make the changes he admitted were necessary,
however, and told Neuharth she would have to bring suit if she wanted any repairs. This conduct
also falls within the definition of a knowing DTPA violation.

 We hold that the award of treble damages pursuant to the DTPA is supported both
by legally and factually sufficient evidence. Point of error one is overruled.


CONCLUSION


 Having found sufficient evidence to support the trial court's award of $4,221.60
in actual damages and the finding of a knowing violation of the DTPA, we affirm the judgment.



 

 J. Woodfin Jones, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: August 12, 1999

Do Not Publish

1. Macis testified that she was indeed interested in purchasing Neuharth's home.
2. We note that the actual damages award was for $4,221.60, the amount of the Color Tile bid,
rather than the insurance estimate of $4,500.


>"Knowing" Violation 


 Section 17.50(b)(1) of the DTPA allows trebling of all actual damages if the trier
of fact finds that the defendant violated the DTPA "knowingly." See DTPA § 17.50(b)(1). In his
first point of error, Moore complains that the evidence is legally or factually insufficient to support
the trial court's finding of a knowing violation of the DTPA. We disagree.

 The Texas Supreme Court recently held that a knowing violation occurs when the
offending party has "actual awareness" of the deception:


"Actual awareness" does not mean merely that a person knows what he is doing;
rather, it means that a person knows that what he is doing is false, deceptive, or
unfair. In other words, a person must think to himself at some point, "Yes, I know
this is false, deceptive, or unfair to him, but I'm going to do it anyway."



St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co., 974 S.W.2d 51, 53-54 (Tex. 1998).


 Our review of the record in the present case reveals ample evidence of a knowing
violation. The most flagrant of this evidence involves the replacement of the carpeting in
Neuharth's master bedroom. It is undisputed that Color Tile's estimate included the re-carpeting
of the entire home, including the replacement of the padding underneath the carpet. On the day
the carpeting was installed, Neuharth remembered Fogarty mentioning that the installers were
running low on padding. After the installation was completed, Neuharth noticed a difference
between the carpeting in the master bedroom and that in the living room. She removed the
carpeting from a corner of her bedroom and discovered that new carpet had been laid over her old
padding, even though she had been charged for new padding. Neuharth testified that when she
complained to Fogarty, he admitted he was aware the old padding had not been replaced. He told
her the installers decided it would be better to install the new carpet over the old pad rather than
do nothing at all. Furthermore, Moore's responses to Neuharth's requests for admissions admit
the carpet padding was not replaced in the master bedroom. This evidence is sufficient to support
a finding of a knowing violation of the DTPA. There is no dispute that Neuharth was charged for
new padding, that the padding was not replaced, that this deception was known, but was done
anyway.

 Moreover, this was not the only evidence of a knowing violation. Neuharth
testified that Prate admitted to her that the flooring installation was completely unacceptable, and
promised to "make it right." He later refused to make the changes he admitted were necessary,
however, and told Neuharth she would have to bring suit if she wanted any repairs. This conduct
also falls within the definition of a knowing DTPA violation.

 We hold that the award of treble damages pursuant to the DTPA is supported both
by legally and factually sufficient evidence. Point of error one is overruled.