NO. 07-01-0281-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



MAY 29, 2002



______________________________




J. EVETTS HALEY, JR., AS TRUSTEE OF THE NITA STEWART HALEY TRUST,


AND AS INDEPENDENT EXECUTOR OF THE ESTATE OF J. EVETTS HALEY,


APPELLANT 



V.



GPM GAS CORPORATION, APPELLEE




_________________________________



FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;



NO. 30,715; HONORABLE LEE WATERS, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.



 By this appeal following a jury trial, appellant J. Evetts Haley, Jr., as Trustee of the
Nita Stewart Haley Trust, and as Independent Executor of the Estate of J. Evetts Haley,
deceased (Haley) presents five issues (restated in our analysis) complaining of the
judgment rendered that he take nothing on his action against GPM Gas Corporation and
granting relief in favor of GPM concerning a five-acre surface lease. (1) Based on the
rationale expressed herein, we affirm.

 On July 11, 1956, Vera Dial Dickey, as lessor, executed a six page written lease 
covering the surface of a five acre tract out of Section 50, Block 25, H&GNRR Co. Survey,
Gray County, Texas to Phillips Petroleum Company, as lessee. (2) As material here,
paragraph 1 of the lease provides

 Lessor does hereby lease and let to Lessee, to use for any lawful purposes
in connection with the erection, maintenance, operation and repair of a gas
booster station and other appurtenances and facilities useful or proper in
connection with gas pipe lines (but the uses to be made by lessee shall not
include the erection or use of any dwellings) . . . . 

(Emphasis added).


Paragraph 2 of the lease provides:

 This lease shall be for a period of one (1) year from this date, herein
called "primary term"; provided, however, that Lessee, its successors and
assigns, at their option, may extend and continue this lease in effect for
successive periods of one (1) year each thereafter indefinitely and
perpetually by payment of annual rentals as hereinafter provided. In order
to continue this lease in force after the expiration of the primary term, Lessee
shall pay or tender to the Lessor on or before one year after this date the
sum of Two Hundred Fifty Dollars ($250.00) as advance annual rental, and
Lessee shall continue to pay said sum of Two Hundred Fifty Dollars
($250.00) as advance annual rental on or prior to the anniversary date of
this lease for each and any year so long as Lessee desires to continue this
lease in force. 


(Emphasis added). The lease was recorded in the Gray County records and when Haley
purchased the land in 1986, GPM was operating a gas booster station and other
appurtenances on the leased premises. (3) 

 After Haley learned that GPM planned to construct a radio repeater tower on the
leased premises, he wrote GPM on April 2, 1996, and inquired about its plans. By
subsequent letters, Haley expressed his position that the lease did not authorize the
construction of the tower. When efforts to arrive at a consensus failed, GPM proceeded
with the construction of a radio repeater tower in 1996 on the leased premises for the sole
purpose of receiving and relaying to GPM's office radio signals transmitting gas
measurement information from electronic flow measurement meters installed at various
well heads and central points of delivery of gas in the area to enhance the operation of its
gas gathering system and pipe lines in the area. Contending that construction of the radio
tower was not authorized by the lease and the use and maintenance of the tower
constituted a trespass, Haley filed his original petition in September 1997, contending
that because the lease was a "tenancy at will" he had terminated the lease and by which
he sought damages for trespass, breach of contract, and other relief. By its answer,
among other things, GPM contended that the lease was not a "tenancy at will," and sought
a declaratory judgment that the lease remained in force and effect, free from interference
by Haley. 

 After considering GPM's motion for summary judgment on May 11, 1998, the trial
court signed its order on July 21, 1998, finding, among other things:

 The lease unambiguously granted GPM an annual option to renew the
Lease indefinitely and in perpetuity;


 Haley's attempts to terminate the lease on the basis that it creates a tenancy
at will are invalid, and do not result in termination of the lease; and




 A material fact issue existed as to whether GPM's construction of a radio
repeater tower on the leased property is within the scope of the lease.


The order concluded:

 IT IS, THEREFORE, ORDERED that partial summary judgment is hereby
entered in favor of GPM in that the Lease unambiguously grants GPM an
annual option to renew the Lease indefinitely and in perpetuity.


 IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary
Judgment is denied in its entirety. Plaintiff's attempts to terminate the Lease
on the basis that it creates a tenancy at will are invalid and did not terminate
the Lease.




 IT IS FURTHER ORDERED that a genuine issue of material fact exists as
to whether GPM's construction of a radio repeater tower on the Lease
property is within the scope of the Lease and is authorized under the Lease.


Then, upon jury trial, based upon the jury's finding that GPM did not fail to comply with the
lease agreement by constructing the radio repeater tower, the trial court signed judgment
that Haley take nothing by the suit and declared that (1) the lease is valid and remains in
full force and effect, (2) GPM has the right to continue to maintain and operate its Lee-Tex
Booster, the Tower, and the radio shack located on the lease, and (3) GPM had the right
to continue to use the leased premises for any lawful purpose in connection with the
erection, maintenance, operation, and repair of a gas booster station and other
appurtenances and facilities useful and proper in connection with gas pipelines, provided
however, that it continues to elect to pay the successive one-year annual renewal options
in accordance with the lease. 

 Considering appellant's issues in a logical rather than sequential order, we
commence our analysis by considering Haley's third issue by which he contends that the
booster station lease established a tenancy at will terminable by either party. We
disagree. Haley did not allege any fraud, accident, or mistake or contend that the July 11,
1956 agreement did not constitute the entire agreement of the parties. We commence our
analysis by reviewing paragraph two of the lease. According to the plain language, the
lease was for a fixed term of one year, commencing July 11, 1956. In addition, the
agreement granted lessee the option to extend the lease for "successive periods of one
(1) year each," so that if lessee timely exercised the option, the lease continued in effect
for a subsequent one year term. In Willis v. Thomas, 9 S.W.2d 423, 424
(Tex.Civ.App.-San Antonio 1928, writ dism'd w.o.j.), the court held: 

 To create an estate for years, or for any definite term, the
lease must be certain, or capable of being made certain, as to
the beginning, duration, and termination of the term.

 

According to the July 11, 1956 agreement, the initial "term" (4) of the lease was July 11,
1956 to July 10, 1957; and upon the exercise of the option by lessee, additional leases
with one year "terms" followed. Because each one year term has its beginning and
termination date, the July 11, 1956 agreement complies with the rule in Willis. 

 The option allowing lessee to continue the lease in the July 11, 1956 agreement is
similar to the provision of the lease considered in Hull v. Quanah Pipeline Corp., 574
S.W.2d 610, 611 (Tex.Civ.App.--San Antonio 1978, writ ref'd n.r.e). In rejecting arguments
similar to the contentions of Haley, the court, in part, concluded: 

 The lease involved here clearly and specifically shows that it was the
intention of both the lessor and the lessee that the lessee should have a
right of perpetual renewal. . . . The provisions of the lease are plain and
unambiguous and they clearly evidence an intent and purpose to create a
right of perpetual renewal. The lease is valid and enforceable and the trial
court's holdings and findings are correct.


Then, in Philpot v. Fields, 623 S.W.2d 546, 548 (Tex.App.--Texarkana 1982, no writ), after
noting that no legitimate reason exists to prevent parties from freely and intelligently
contracting for the terms of a lease, the court held that a lease for 

 a term of 20 years and so long thereafter as the lessee, his heirs,
successors or assigns, may use the premises for the purpose of maintaining
and operating a LTX separator, tank and other machinery . . . 

 

upon payment of an annual rental of $75.00 was enforceable and did not create a tenancy
at will terminable at the will of either party.

 Norman, et al. v. Morehouse, et al., 243 S.W. 1104 (Tex.Civ.App.--Amarillo 1922,
writ dism'd w.o.j.), cited by Haley, is not controlling because the lease was partially oral
and the lessee contended that the lease ran "so long as either of the defendants engaged
in the business of making and repairing harnesses, shoes, etc." Here, however, the
expiration date of each year lease was specific. Further, we have not overlooked Haley's
reference to Holcombe v. Lorino, 124 Tex. 446, 79 S.W.2d 307 (1935). However, the
former Holcombe opinions, see 76 S.W.2d 509 (Tex.Comm'n.App. 1934) and 71 S.W.2d
71 (Tex.Civ.App.--Galveston 1934), taken together also demonstrate that Holcombe is not
controlling here. Initially, Haley acknowledges that the rental agreement in Holcombe was
oral, whereas the July 11, 1956 lease was written and recorded. Next, according to the
opinion of the Texas Commission of Appeals, 76 S.W.2d at 510, section 922 of the
Revised Code of Ordinances for the City of Houston, provided in part, "[a]ll leases or rental
contracts shall run from month to month revokable at the pleasure of the mayor or city
council," and in October 1933, the mayor and council gave written notice of revocation of
the rental contract. In contrast, however, the July 11, 1956 agreement under review here
did not give lessor the right to revoke the lease or otherwise avoid the exercise of the
option to renew by lessee. Then, according to the opinion of the Court of Civil Appeals in
Holcombe, 71 S.W.2d at 403, Lorino alleged a tenure for the stall by "reason of its having
long been the uniform practice, custom, and invariable result to those so renting, using,
and improving such stalls . . . " whereas here the written lease agreement is clear, definite,
and specific. Moreover, the Supreme Court discussion is not a general statement of the
rule. To the contrary, by its statement, "[f]or the purposes of this opinion," the holding is
"case specific" and not applicable here. Moreover, even if applicable, at any given year
following July 11, 1956, the duration of the lease was the following July 10, unless
extended by lessee's exercise of the option. Accordingly, Haley's third issue is overruled.

 By issues one and two, (5) as restated, Haley contends that where the lease is
unambiguous and the conduct of the parties is undisputed, the trial court erred by
submitting a pure question of law involving interpretation of an unambiguous lease to the
jury as a question of fact. We disagree.

 At the charge conference, Haley requested that the trial court submit the following
breach of contract question: (6)

 Did GPM's actions in building the radio repeater tower constitute a breach
of the July 11, 1956 lease agreement?


The trial court refused to submit Haley's requested question, but instead, submitted the
question, "Did GPM fail to comply with the lease agreement dated July 11, 1956 by
building a radio repeater tower," (7) to which the jury answered no.

 Although the record shows that Haley requested that the trial court submit a
question to the jury asking whether the construction of the radio tower constituted a breach
of the July 11, 1956 agreement, and that the trial court refused Haley's request, the record
does not show that Haley objected to the question which asked substantially the same
question which the jury answered adverse to Haley. Rule 274 of the Texas Rules of Civil
Procedure requires that objections to the charge must point out distinctly the objectionable
matter and the grounds of the objection, otherwise the objection is waived. Wal-Mart
Stores, Inc. v. McKenzie, 997 S.W.2d 278, 280 (Tex. 1999). Also, in order to preserve a
complaint for our review, a party must distinctly specify an objection to the trial court. Tex.
R. App. P. 33.1(a); St. Paul Surplus Lines v. Dal-Worth Tank, 917 S.W.2d 29, 45 (Tex.
App.--Amarillo 1995), aff'd in part and rev'd in part, 974 S.W.2d 51 (Tex. 1998). The
purpose of an objection is two-fold: (1) to notify the trial judge and the other party of the
complaint; and (2) to preserve the complaint for appellate review. Wilkerson v. PIC Realty
Corp., 590 S.W.2d 780, 782 (Tex.Civ.App.--Houston [14th Dist.] 1979, no writ). Moreover,
the complaint on appeal must be the same as that presented in the trial court. Edward v.
Texas Employment Com'n, 936 S.W.2d 462, 466 (Tex.App.--Fort Worth 1996, no writ). 
Because Haley did not object to the charge on the ground that it submitted a pure question
of law involving interpretation of an unambiguous lease to the jury, the error was not
preserved and nothing is presented for review. Further, because Haley requested that
the trial court include substantially the same question in the charge to the jury, Haley's
contention is barred by the doctrine of invited error, which is an equitable doctrine well
established in Texas jurisprudence. See General Chemical Corp. v. De La Lastra, 852
S.W.2d 916, 920 (Tex. 1993), cert. dism'd, 510 U.S. 985, 114 S.Ct. 490, 126 L.Ed.2d 440
(1993). Accordingly issues one and two present nothing for review and are overruled.

 By his fifth issue, Haley contends the trial court erred in excluding expert and lay
testimony regarding the scope of the lease that conflicts with the District Court's decision
to submit the question of lease interpretation to the jury. We disagree. Regarding the 
exclusion of evidence offered by J. Evetts Haley, Jr. and Jeff Haley as non-expert
witnesses, the brief does not reference the record where a bill of exceptions is located in
the record and we have found none. Because the suggested testimony of these two
witnesses was not presented by bill of exception, no error is preserved for our review. See
Tex. R. App. P. 33.2; Hartford Ins. Co. v. Jiminez, 814 S.W.2d 551, 552 (Tex.App.-- 
Houston [1st Dist.] 1991, no writ). 

 Haley also contends the trial court erred in excluding the testimony of attorney Tom
Scott as an expert to testify that the construction of the radio tower was not within the
scope of the lease agreement, which is presented by bill of exception. During the pre-trial
conference on the day of trial, among other things, by reviewing the discovery documents, 
counsel for GPM, demonstrated that Tom Scott had not been designated as an expert
witness and should not be permitted to testify.

 Rule 193.6(a) of the Texas Rules of Civil Procedure provides in part:

 (a) Exclusion of Evidence and Exceptions. A party who fails to make, 
amend, or supplement a discovery response in a timely manner may not 
. . . offer the testimony of a witness . . . who was not timely identified, unless
the court finds that:

 (1) there was good cause for the failure to timely make,
amend, or supplement the discovery response; or

 (2) the failure to timely make, amend, or supplement the
discovery response will not unfairly surprise or unfairly
prejudice the other parties.


Under subparagraph (b) the burden of establishing good cause or lack of surprise is on
the proponent of the witness and a finding of good cause or the absence of unfair surprise
must be supported by the record. Also, subparagraph (c) provides that the trial court may
grant a continuance so that the opposing party may conduct discovery. In applying Rule
193.6, in Snider v. Stanley, 44 S.W.3d 713, 715 (Tex.App.--Beaumont 2001, pet. denied),
noting that the opposing party had not had the opportunity to take the deposition of the
expert witness, the court upheld the decision of the trial court to exclude the testimony of
the expert witness not timely designated. Also, the court held that the denial of the motion
for continuance was not an abuse of discretion. 

 Although the trial court excluded Scott's testimony, Haley's brief does not address
the ruling of the trial court, and does not contend that the trial court erred in excluding the
testimony under Rule 193.6. Moreover, Haley does not make any reference to the record
which demonstrates good cause or that the absence of unfair surprise is supported by the
record. Accordingly, we conclude the trial court did not err in excluding the testimony of
the non-designated expert witness. Issue five is overruled.

 By his fourth issue, Haley contends the trial court erred by failing to submit a
question to the jury regarding GPM's trespass on the Haley ranch in connection with the
construction of the maintenance of the radio communications tower. In this regard,
because the jury found that GPM did not fail to comply with the lease agreement by
building the radio repeater tower, and we have overruled issues one and two above, the
question is moot and our consideration of this issue is not necessary to our disposition. 
Tex. R. App. P. 47.1. 

 Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice

Publish.
1. 1. Whether the interpretation of an unambiguous surface lease is a question of law
for the court? Whether a dispute over the scope of a surface lease is a question of law for
the court when the conduct of the parties to the lease is undisputed?

 2. Whether GPM exceeded the scope of a gas booster station surface lease by
erecting a 180' radio communications tower to relay information from over 200 wells
(located as far as 45 miles away from the tower), when 98% of those wells are not
connected to or served by the gas booster station?

 3. Whether a surface lease with an indefinite term is a tenancy at will terminable
at the will of either the lessor or lessee?

 4. Whether the District Court erred by failing to submit a question to the jury
regarding GPM's trespass on the Haley ranch in connection with the construction and
maintenance of the radio communications tower?

 5. Whether the District Court's exclusion of expert and lay testimony regarding the
scope of the lease conflicts with the District Court's decision to submit the question of
lease interpretation to the jury. 
2. Paragraph four of the lease provided that the lease was assignable and that its
provisions would extend to the parties to the lease, their heirs, successors and assigns. 
Now, Haley is the lessor and GPM is the lessee.
3. Haley does not contend that the annual rentals of $250.00 have not been timely
paid each year in accordance with paragraph 2 of the lease.
4. Duration of the lease.
5. Set out in footnote one.
6. Haley also requested the following instruction: In determining whether a breach has
been committed, you are instructed that a "breach" is any act which exceeds or passes
beyond the bounds of any rights which had been legally granted. For example, where one
enters another's property under the authority of an expressed or conditional contract but
exceeds the expressed or conditional rights granted in the contract, that person breaches
the contract. A conditional or restricted consent to enter land under a contract creates a
privilege to do so only insofar as the condition or restriction is complied with pursuant to
the terms of the contract. In determining the question of a breach in contract, you are
further instructed that the intent is not a factor. 
7. Instruction: You are instructed that "fail to comply with the lease agreement" is any
use of the leased property that is not for any lawful purpose in connection with the
erection, maintenance, operation and repair of a gas booster station and other
appurtenances and facilities useful or proper in connection with gas pipe lines. The court
also defined "facility" as something that is built or installed to perform some particular
function and an "appurtenance" as an apparatus, equipment, or accessory that belongs
to or is attached to something else.