CLAYTON DAVIS, JR. V. THE STATE OF TEXAS



NO. 07-03-0457-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



MAY 14, 2004



______________________________




CLAYTON EDWARD DAVIS, JR., APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 252ND DISTRICT COURT OF JEFFERSON COUNTY;



NO. 89638; HONORABLE LAYNE WALKER, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

ORDER


 Appellant Clayton Edward Davis, Jr., appeals from his judgment of conviction for
murder and sentence of life imprisonment and a fine. The trial court clerk's record was filed
on November 24, 2003. The court reporter's record originally was due to be filed on
January 12, 2004.

 By letter of January 16, 2004, at the request of the court reporter, the appellate court
clerk extended the time to file the reporter's record to February 11, 2004. On February 19, 
again at the reporter's request, the appellate court clerk further extended the time to file the
reporter's record to March 22, 2004. A third request for extension of time was made by the
court reporter March 26, 2004. That request, for a 90-day extension, was denied by this
Court and the court reporter was given until May 3, 2004 to file the record. The reporter
was advised that no further extensions would be granted absent exceptional
circumstances. On May 7, a fourth extension request was filed by the court reporter
requesting an additional 90 days to file the record. The request states simply that she has
not completed the record due to "time spent in court on a weekly basis and having to meet
other deadlines on other records." Previous extension requests indicate that the record
runs approximately 3500 pages. 

 The reporter's request does not detail exceptional circumstances justifying the
extension. Accordingly, the request is denied. We order Jami Anderson, official court
reporter for the 252nd District Court of Jefferson County, to transcribe and file with the
Clerk of this Court a reporter's record as required by the Texas Rules of Appellate
Procedure and encompassing trial court number 89638. The record shall include all
argument, evidence, and exhibits presented to the court during trial, as well as any pretrial
and post-trial hearings conducted in said cause. We further order Jami Anderson to file the
reporter's record in a manner by which it will be actually received by the Clerk of this Court
on or before 5:00 p.m. on June 14, 2004. No further motions for extension of time will be
considered. 

 Failure to file the reporter's record as directed by this Court's order may result in one
or more of the following: 

 1) A hearing requiring Jami Anderson to show cause why she should not be
held in contempt;


 A complaint to the Court Reporter's Certification Board;
 Appropriate sanctions; or
 Abatement to the trial court for appropriate action. 


 

 It is so ordered.

 Per Curiam 


Do not publish.



ent to continue to serve as temporary managing 
conservator of the child; and

 (4) orders the department to monitor the child's placement to ensure that 
the child is in a safe environment. 


 Here, on May 14, 2001, the Department filed an Original Petition for Protection of
a Child, For Conservatorship, and for Termination in Suit Affecting the Parent-Child
Relationship. The Department requested that the court immediately appoint the
Department temporary sole managing conservator of Mayo's children. The court did so on
May 18, 2001, and set an original dismissal date of May 20, 2002, in accordance with
Section 263.401. 

 On May 17, 2002, counsel for the children's father filed a motion requesting the
court retain the suit on its docket and set a new dismissal date. On the same day, the court
granted the motion, retained the suit on its docket and set a dismissal date of November
13, 2002, pursuant to Section 263.401(b). A final hearing was set for November 1, 2002,
and all parties were notified. 

 In October of 2002 the court ordered all parties to attend and participate in mediation,
scheduled for October 24, 2002. Appellant did not attend. The parties who were present
at the mediation reached an agreement whereby the children would be returned to their
father under supervision of the Department. They also agreed the Department would be
allowed to file a supplemental petition, adding the children's foster parents as parties to the
suit. At a hearing held on November 1, 2002, the court found it was in the children's best
interest to be placed in the father's home and ordered them returned to the father on a
monitored return. Although notified, appellant was not present at the hearing. The children
were returned to the care of their father on November 5, 2002. Pursuant to Section
263.403(b), the dismissal date was reset for April 30, 2003, 180 days from the date the
temporary order was rendered.

 The monitored placement ended on December 17, 2002, when the court signed an
order returning the children to the care of the Department. The order contained findings
that the children's father had failed to attend BIPP classes, (2) left the children with individuals
not approved by the Department, used alcohol, and left the children with inappropriate care
givers. The court reset the final date for dismissal to June 15, 2003, in accordance with
Section 263.403 (c). 

 On June 9 and 13, 2003, the court held a hearing to determine whether the parental
rights of appellant and the father of the children should be terminated. The court ordered
termination of both parents' parental rights on the 13th, and signed a written judgment to
that effect on June 16, 2003. Jeffrey Wayne Mayo, Sr., father of J.W.M., Jr. and L.P.M.,
filed a notice of appeal, but has not filed a brief or otherwise pursued his appeal.

 Appellant relies on In re T.M., 33 S.W.3d 341 (Tex.App.-Amarillo 2000, no pet.), to
support her contention that the dismissal deadline was improperly extended pursuant to a
mediated agreement. The parties in In re T.M. attempted to bypass the deadline imposed
by Section 263.401 by executing a written agreement to postpone a final hearing and
dismissal date. This court held that an agreement to extend the Section 263.401 dismissal
date was unenforceable. Id.

 Appellant is incorrect in her assertion that the court here extended the deadline for
a final hearing in order to comply with terms of the mediation agreement. The court followed
the agreement to the extent it returned the children to the possession of their father, but the
terms of the agreement were not binding on the court, and the deadline for a final order was
extended not by the agreement, but by the provisions of Section 263.403. Tex. Fam. Code
Ann. § 263.403(b)(2). In re T.M. noted that the "deadlines imposed by Section 263.401 may
be avoided via an order directing, among other things, the DPRS to relinquish actual
physical custody of the child to a parent." 33 S.W.3d at 346 n.4 (citing former Tex. Fam.
Code Ann. § 263.402(a), currently § 263.403). 

 Appellant asserts that allowing additional extensions under Section 263.403, when
the 18-month maximum case duration under Section 263.401 has expired, defeats the
legislative intent that child custody issues be resolved speedily. But when a statute is clear
and unambiguous, we give the statute its common meaning. One 1985 Chevrolet v. State,
852 S.W.2d 932, 935 (Tex. 1993); Cail v. Service Motors, Inc., 660 S.W.2d 814, 815 (Tex.
1983). We must presume that the legislature chose its words carefully, that every word in
a statute was included for some purpose and that every word excluded was omitted for a
purpose. Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981); In re
M.J.M.L., 31 S.W.3d 347, 354 (Tex. App.--San Antonio 2000, pet. denied). If the legislature
intended that Section 263.403 be subject to the time restraints of Section 263.401, we
presume that it would have worded the statute to that effect. Instead, the first sentence of
Section 263.403 plainly states that it is effective, "Notwithstanding Section 263.401, . . ." 
Appellant's first issue is overruled. 

 Appellant, in her second issue, complains that counsel was appointed for her only
21 days before the termination hearing. She couches her complaint as one of ineffective
assistance of counsel, arguing, by analogy to the requirement of Rule 245 of the Rules of
Civil Procedure that a party be given 45 days notice of a trial setting, that appointment of
counsel 21 days before the hearing (3) necessarily rendered counsel's assistance ineffective.

 As the Department points out, appellant did not request a continuance or otherwise
raise any objection at the termination hearing that her counsel had insufficient time or
opportunity to prepare for trial. The Department urges that appellant has not preserved the
complaint for appellate review. Appellant argues she is entitled to raise the issue for the first
time on appeal. We express no opinion on that question, (4) but will overrule the issue.

 The Texas Supreme Court has adopted the Strickland test as the appropriate
standard for evaluating ineffective assistance of counsel claims in civil parental-rights
termination proceedings. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.
Ed. 2d 674 (1984); In re M.S., 115 S.W.3d 534, 544-45 (Tex. 2003). Under Strickland,
appellant must first show that her counsel's performance was deficient. 466 U.S. at 687.
This requires showing that counsel made errors so serious that counsel was not functioning
as the "counsel" guaranteed by the Sixth Amendment. Id. Second, she must show that the
deficient performance prejudiced the defense. This requires showing that counsel's errors
deprived her of a fair trial, a trial whose result is reliable. Id. 

 Appellant does not assert that she was ineffectively represented. (5) She asserts that
the short time provided counsel "greatly affected" her ability to prepare properly for trial of
the case, but she does not point to any act or omission of counsel that rendered the
representation ineffective. Appellant's second issue is overruled. Appellant's third issue alleges the trial court erred in allowing the joinder of the foster
parents, Ivan and Becky Sharp, and their subsequent appointment as possessory
conservators under a mediation agreement. Appellant, although given notice, did not attend
a mediation session ordered by the court. An agreement was reached by those attending
the mediation that the Sharps should be added as parties to the suit and be named as
possessory conservators of the children. The Department filed a supplemental petition in
November 2002 naming the foster parents as parties. Appellant contends that the foster
parents do not meet the requirements for joinder in Texas Rule of Civil Procedure 39(a) and
that their participation in mediation, and presence in the courtroom during the trial,
prejudiced appellant, causing an improper judgment.

 The Department contends appellant waived her complaint over joinder of the foster
parents, and we agree. A complaint about the joinder of a party is waived if not timely raised
with the trial court. Rosales v. H. E. Butt Gro. Co., 905 S.W.2d 745, 751 (Tex.App.-San
Antonio 1995, writ denied); University of Tex. at Austin v. Hinton, 822 S.W.2d 197, 200
(Tex.App.-Austin 1991, no writ); see Tex. R. Civ. P. 41. Appellant did not challenge the
joinder of the Sharps, or their presence in the courtroom, at the time of trial. (6) Appellant
waived her right to complain of the joinder on appeal. 

 Moreover, the Sharps expressed a desire to adopt the children. With the exception
of five weeks the children resided with their father in the fall of 2002, they were the sole care
givers of the children from December of 2001 until the final hearing in June of 2003. Under
Section 102.004 of the Family Code, the court may grant a person, deemed by the court to
have had substantial past contact with the child, leave to intervene in a pending suit filed by
a governmental entity such as the Department. Tex. Fam. Code Ann. § 102.004(b); In re
M.T., 21 S.W.3d 925 (Tex.App.-Beaumont 2000, no pet.); see In re A.M., 60 S.W.3d 166,
169 (Tex.App.-Houston [1st Dist.] 2001, no pet.). The Sharps' joinder in the suit as parties
accomplished the same result. Appellant's third issue is overruled.

 Appellant's fourth issue challenges the sufficiency of the evidence to support the
judgment of termination under Section 161.001. The judgment may be affirmed if it is
supported by evidence sufficient to establish that one of the grounds listed in Section
161.001(1) exists and that termination is in the best interest of the children, as required by
Section 161.001(2). In re A.V., 113 S.W.3d 355, 362 (Tex. 2003); In re P.E.W., 105 S.W.3d
771, 777 (Tex.App.-Amarillo 2003, no pet.). 

 The trial court found that appellant knowingly allowed the children to remain in
conditions or surroundings which endangered the physical or emotional well-being of the
children, Section 161.001(1)(D); that appellant engaged in conduct or knowingly placed the
children with persons who engaged in conduct that endangered the physical or emotional
well-being of the children, Section 161.001(1)(E); and that termination of parental rights
between appellant and her children was in the best interest of the children. Because we find
the evidence sufficient to support the finding under Section 161.001(1)(E), we consider only
the evidence addressing that ground. Appellant does not tell us if she challenges the legal
sufficiency or factual sufficiency of the evidence. We consider the evidence under both
standards.

 Findings under Section 161.001 must be based on clear and convincing evidence.
Tex. Fam. Code Ann. § 161.001. Clear and convincing evidence is the measure or degree
of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the
truth of the allegations sought to be established. Tex. Fam. Code Ann. § 101.007. The clear
and convincing evidence burden of proof requires a higher level of appellate scrutiny in
reviewing the legal and factual sufficiency of the evidence. In re J.F.C., 96 S.W.3d 256 (Tex.
2002); In re C.H., 89 S.W.3d 17, 19 (Tex. 2002). 

 In reviewing legal sufficiency, we look at all the evidence, in the light most favorable
to the judgment, to determine if the trier of fact could reasonably have formed a firm belief
or conviction that grounds existed for termination under the Family Code. In re J.F.C., 96
S.W.3d at 265-66. When there is a factual sufficiency challenge, we consider only evidence
the fact finder could reasonably have found to be clear and convincing. Id. at 266. The
evidence must be such that a fact finder could reasonably form a firm belief or conviction that
grounds exist for termination under Texas Family Code Sections 161.001 and 161.206(a).
In re C.H., 89 S.W.3d at 18-19. In the context of our review of the evidence that appellant's
conduct, or that of persons with whom she knowingly placed the children, endangered their
physical or emotional well-being, to "endanger" means to expose to loss or injury; to
jeopardize. Texas Dep't of Human Services v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). 

 The twins were born in May 2000. The record reflects that appellant had little
involvement with their care after April 2001, so the evidence with regard to her conduct
focuses on the children's first year. 

 Appellant testified to a history of drug problems. She began using illegal drugs when
she was sixteen, (7) beginning with marijuana and later involving cocaine and
methamphetamines. Her methamphetamine use began several years before the twins' birth.
She testified that she stopped using methamphetamines before she became pregnant with
the twins, but resumed use of the drugs within three months after their birth. She used the
drugs while caring for the children. Her testimony was that her children were in danger when
they were in her care after her drug use resumed. At the hearing, appellant and the twins'
father presented a united front on the question of termination, both of them testifying that the
parental rights of neither should be terminated. The father testified, though, that appellant's
drug use led him to contact the Department as early as January 2001 with regard to the care
she was giving the children.

 During periods that appellant and her husband were separated after the twins' birth,
she also left them in the care of acquaintances she admittedly knew were using drugs. A
caseworker testified that appellant admitted leaving the infants for as long as a month. On
another occasion to which appellant testified, she went to Florida, leaving her children with
a friend who was arrested while caring for the children. The friend's fifteen-year-old daughter
took care of the children until appellant returned. Appellant also left the children at home
with their father when he was unconscious from drinking. 

 The record contains sufficient uncontroverted, clear and convincing evidence, much
of it from appellant's own testimony, for the court to have reasonably formed a firm belief or
conviction that appellant engaged in conduct or knowingly placed the children with persons
who engaged in conduct that endangered the physical and emotional well-being of the
children. Tex. Fam. Code Ann. § 161.001(1)(E).


 We next consider whether the evidence is sufficient to demonstrate that termination
of appellant's parental rights was in the children's best interest. The evidence offered to
prove the grounds for termination is also relevant in determining if termination is in the
children's best interest. In re C.H., 89 S.W.3d at 28; In re P.E.W., 105 S.W.3d at 779. See
also Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976). 

 Appellant's pattern of absence from her young children continued after the
Department assumed responsibility for their care. The record reflects little contact between
appellant and those responsible for her children's care for a period of eighteen months
beginning about the time of their first birthday. At one point appellant left a halfway house,
without notifying the Department of her whereabouts, for approximately nine months. She
then had contact with the Department, but a short time later disappeared again for six
months. She did not provide financial support for the children. Appellant testified to several
reasons for her absence, including concerns for her own physical health, her belief that her
parental rights had already been terminated and her knowledge that she was not capable
at the time of taking care of the children. Regardless of the reasons for her separation from
them, though, the twins were without contact with their mother for a significant part of their
lives. 

 During her absence, the twins had bonded with the Sharps, with whom they had
resided since December 2001 except for the five weeks of the failed monitored placement
with their father. Even during those weeks, the Sharps had regular contact with the children,
sometimes picking them up from day care at their father's request. All parties acknowledged
the quality of care the Sharps had given the children, and that the children were thriving
under their care. Becky Sharp testified to their eagerness to adopt the children. 

 Appellant argues that the court should not base a finding on the best interest of the
children simply on the conclusion that the foster parents would be a "better" placement for
the children. While the prospect of adoption into a stable home cannot alone be said to be
a determinative factor, it clearly is among the factors the court properly could consider in this
case. See In re C.H., 89 S.W.3d at 28; Holley, 544 S.W.2d at 372. The twins' guardian ad
litem cited their need for certainty and stability, and the prospect of an adoptive placement
with the Sharps, in recommending termination. 

 Appellant's case emphasized the improvement in her behavior and circumstances
during the months prior to the June 2003 final hearing. She presented undisputed evidence
that weighs against a finding that termination was in the children's best interest, including
evidence that she had completed an inpatient drug treatment program and CPS parenting
classes, and, for a period of time, attended AA meetings on a weekly basis. She also
indicated that she relocated to a smaller town in March of 2003, partly to avoid former
acquaintances who were involved in drug use. She testified to her desire to raise her
children, and to her plans to marry, after her divorce from the twins' father became final, the
man with whom she was living. The testimony of that man and of other family members was
supportive.

 Appellant also testified that she had not used drugs since November 2002. The
Department presented a urinalysis report based on a sample taken in late May shortly before
trial that was positive for methamphetamine use. Appellant disputed the correctness of that
report, and presented both a urinalysis report and a hair follicle analysis report from samples
taken a few days later, both indicating no drug use. There was testimony that a hair follicle
analysis will reveal drug use within ninety days of the test; there also was testimony, though,
that hair follicle analysis may not reveal very recent drug use.

 Appellant does not directly make the argument, but her emphasis on evidence of
improvements in her life during the months just before trial suggests greater weight should
be given that evidence, mandating the conclusion that the evidence in favor of the best
interest finding is factually insufficient. See, e.g., In re K.C.M., 4 S.W.3d 392
(Tex.App.-Houston [1st Dist.] 1999, pet. denied). But see In re M.G.D., 108 S.W.3d 508, 513-14 (Tex.App.-Houston [14th Dist.] 2003, no pet.). Such an analysis is not appropriate in this
case. Appellant's long absence from the twins' lives at a tender age and their bonds with
prospective adoptive parents provide support for the trial court's finding. Further, although
there was evidence that appellant's own prospects for stability had improved before trial, it
cannot be said that her rehabilitation was free from doubt. Finally, although the evidence of
appellant's resumption of drug use was controverted, the trial court was not required to
disregard it. The law observes a strong presumption that a child's best interest is usually
served by maintaining the parent-child relationship. See In re M.D.S., 1 S.W.3d 190, 197
(Tex.App.-Amarillo 1999, no pet.). In this case, evidence was both legally and factually
sufficient to permit the trial court, as fact finder, reasonably to form the firm belief or
conviction that these young children's best interest called for termination of that relationship
with their mother. 

 Appellant's fourth issue is overruled. The judgment of the trial court is affirmed.


 James T. Campbell

 Justice




 



 




1. Unless otherwise indicated, all references to Sections are to the Texas Family
Code.
2. BIPP is a "batterer's intervention program" designed to help prevent domestic
violence.
3. Cf. Tex. Code Crim. Proc. Ann. art. 1.051(e) (Vernon Supp. 2004) (appointed
counsel entitled to ten days preparation time).
4. Nor do we express an opinion on appellant's contention that the trial court was
obligated to appoint counsel for her before she requested counsel or demonstrated
indigency.
5. Appellant is represented on appeal by the same counsel who represented her by
appointment at the termination hearing.
6. Joinder of the Sharps was among the grounds mentioned in appellant's motion for
new trial. Presentation of the objection in that motion, though, did not preserve it for
appellate review. See St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co., 974 S.W.2d
51, 53 (Tex. 1998); Hoxie Implement Co. v. Baker, 65 S.W.3d 140, 145 (Tex.App.-Amarillo
2001, pet. denied)
7. At the time of the final hearing appellant was twenty-eight years of age.