**Opinion issued August 30, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00133-CV

———————————

**UNITED SERVICES AUTOMOBILE ASSOCIATION,**
**Appellant/Cross-Appellee**
**V.**

**JOSEPH HAYES, JR. AND JOANNE HAYES, Appellees/Cross-Appellants**

---

**On Appeal from the 165th Judicial District Court**
**Harris County, Texas**
**Trial Court Case No. 2009-63319**

---

## O P I N I O N

Appellant/Cross-Appellee, United Services Automobile Association

("USAA"), challenges the trial court's judgment, entered after a jury trial, in favor

of Appellees/Cross-Appellants, Joseph Hayes, Jr. and Joanne Hayes (collectively,

"the Hayeses"), in their suit against USAA for breach of contract and violations of the Texas Insurance Code.[1] In three issues, USAA contends that there is no evidence to support the jury's finding that it failed to comply with its insurance policy in regard to the Hayeses' claim for damage caused by Hurricane Ike to the roof of their house; the trial court erred in awarding the Hayeses "a specific amount of costs"; and the trial court erred in awarding the Hayeses "$56,421.65 in court costs."

In their cross-appeal,[2] the Hayeses contend that the trial court erred in concluding that USAA conclusively established that they had made an excessive demand upon it and disregarding the jury's corresponding award of $237,500 for their attorney's fees for representation in the trial court; disregarding the jury's finding that USAA had knowingly engaged in an unfair or deceptive act or practice that caused them $30,000 in additional damages; disregarding the jury's finding that $5,000 would fairly and reasonably compensate them for damage to the interior of their home and garage; and not awarding them penalty interest pursuant to the Texas Insurance Code.[3]

We affirm in part and reverse and remand in part.

---

[1] See TEX. INS. CODE ANN. §§ 541.151, 541.060, 542.055, 542.056, 542.058, 542.060 (Vernon 2009 & Supp. 2015).

[2] See TEX. R. APP. P. 38.2(b)(1).

[3] See TEX. INS. CODE ANN. § 542.060.

## Background

In their Second Amended Petition, the Hayeses alleged that in September 2008, Hurricane Ike caused damage to their house in Clearlake and Mr. Hayes reported their claim of exterior damage to USAA in late September.

The evidence presented at trial reveals that while waiting for a USAA adjuster to inspect the damage to their house, the Hayeses, on November 5, 2008, had their roof inspected by Brinkman Roofing ("Brinkman"). Captain Kenyon of Brinkman reported that wind had caused damage to their roof, it needed to be replaced, and it would cost $11,593 to replace the roof.

However, when Cynthia Melena, USAA's adjuster, viewed the Hayeses' house later in November, she opined that it had sustained damages totaling $9,319. And she concluded that the roof had not in fact been damaged by wind because she found no torn, creased, or missing shingles. Melena did note at the time that the roof did have shingles that were "unsealed."

USAA subsequently sent to the Hayeses a "Claim Payment" letter in which it stated that the actual cash value settlement due to the Hayeses was $7,209.38. After Mr. Hayes complained to USAA that its settlement value was too low, USAA sent a second adjuster, Stephen Taylor, to re-inspect the house on December 3, 2008. Taylor opined that the Hayeses' house had sustained $9,892 in damages, but he also concluded that the roof had not been damaged by wind. After

Mr. Hayes again complained to USAA, it sent a third adjuster, Jack Berke, to inspect the roof. Berke opined that wind turbines on the roof, and the roofing surrounding the turbines, needed to be replaced. Although he saw six to seven damaged shingles, he concluded that the entire roof did not need to be replaced. And Berke estimated that the house had sustained damages totaling $12,006.

In May 2009, USAA sent Peter Weakly, the fourth and final adjuster, to inspect the damage to the Hayeses' house. He noted that "40-60%" of the shingles on the roof were "lifted" and "not sealed," most of the lifted shingles were located on the front slope and the center of the front slope of the roof, and one shingle might have been nicked by flying debris. Weakly did not see any evidence of "creased" shingles, which would have been indicative of wind damage. And he opined that wind did not cause the lifted shingles to become unsealed; rather, this was caused by "poor manufacturing, defective shingles, at the time." Weakly did see a torn shingle, but concluded that it was torn by a Brinkman roofer. He also saw damage to vent pipes on the roof, but he concluded that the damage had been caused by squirrels, not Hurricane Ike. When Weakly entered the house, he found water damage in the master bedroom, dressing area, and master bathroom. However, he opined that this interior water damage was caused by the exterior damage to the vent pipes on the roof. In all, Weakly estimated that the Hayeses'

house had sustained $28,473.09 in damages, including the costs to reseal the shingles on the roof.

At trial, Mr. Hayes testified that although USAA had paid him $24,025 on his claim, he paid $8,450 out of his own pocket for repairs. And, even with the money that he received from USAA, he was not able to make all of the needed repairs to the house. Moreover, after Weakley had inspected the house, Mr. Hayes contacted USAA to ask if it was going to replace the roof, USAA responded, "[T]hat's it."

After hearing the evidence, the jury returned its verdict, finding that USAA had failed to comply with the insurance policy regarding the Hayeses' claim "for roof, garage door, and other exterior damage" to their house. It further found that USAA had "knowingly" engaged in "unfair or deceptive act[s] or practice[s]" that caused the Hayeses damage, specifically by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of their claim after USAA's liability had become reasonably clear; failing to promptly provide the Hayeses with a reasonable explanation of the basis in the policy for USAA's denial of their claim or an offer of a compromise settlement of their claim; and refusing to pay the Hayeses' claim without conducting a reasonable investigation. And the jury found that USAA had failed to notify the Hayeses "in writing" of its "acceptance or

rejection of their claims by June 10, 2009" and "comply with its duty of good faith and fair dealing" to the Hayeses.

The jury awarded the Hayeses $20,000 for "[d]amage to the roof, garage door, and other exterior damage" to their house, $5,000 for "[d]amage to the interior of the home and garage," and $2,000 for damages proximately caused by USAA's "failure to comply with its duty of good faith and fair dealing." In addition to their actual damages, it awarded the Hayeses $30,000 because USAA had committed its conduct knowingly. And the jury awarded the Hayeses $237,500 in attorney's fees for representation in the trial court and $50,000 for representation in the court of appeals.

In its Motion for Judgment Notwithstanding the Verdict ("JNOV"), USAA asserted that the Hayeses had presented no evidence to establish that they had suffered a direct physical loss; USAA committed violations of the Texas Insurance Code; they suffered damages in regard to their claims for breach of contract and violations of the Texas Insurance Code; they suffered $20,000 in damage to the roof, garage door, and other exterior damage; they suffered $5,000 in damage to the interior of their home and garage; USAA "knowingly" engaged in "unfair or deceptive act[s] or practice[s]" that caused damage to the Hayeses; and USAA failed to comply with its duty of good faith and fair dealing that proximately caused damages of $2,000 to the Hayeses. USAA further asserted that the

6

Hayeses' evidence on attorney's fees is "improper as a matter of law"; their attorney's fees are limited due to the fact that they made an excessive demand upon USAA; and, alternatively, their recovery of attorney's fees is limited under the Texas Insurance Code.[4] In their response, the Hayeses asserted that they did not make an excessive demand upon USAA and legally sufficient evidence supports the jury's findings and awards.

In its judgment, the trial court disregarded the jury's award of $5,000 for damage to the interior of the Hayeses' home and garage; the jury's finding that USAA "knowingly" engaged in "unfair or deceptive act[s] or practice[s]" and corresponding award of $30,000; the jury's award of $2,000 for USAA's failure to comply with its duty of good faith and fair dealing; and the jury's award to the Hayeses for attorney's fees for representation in the trial court. And the trial court reduced the award of attorney's fees for trial representation to "$0, reflecting the [c]ourt's finding of excessive demand" by the Hayeses. In accord with the remainder of the jury's verdict, the trial court rendered judgment in favor of the Hayeses and against USAA based upon the jury's findings that USAA had failed to comply with the insurance policy and violated the Texas Insurance Code. And it awarded the Hayeses $20,000 in actual damages, plus pre- and post-judgment interest, and $56,421.65 in "taxable court costs." The Hayeses then filed a Motion

---

[4] *See* TEX. INS. CODE ANN. § 541.159 (Vernon 2009).

to Modify, Correct or Reform the Judgment and a Motion for New Trial on Attorney's Fees, both of which were overruled by operation of law.[5]

## Breach of Contract

In its first issue, USAA argues that the trial court erred in denying its motion for JNOV and "rendering judgment on the [Hayeses'] breach of contract claim because there [is] no evidence of a direct physical loss with respect to unsealed shingles." USAA asserts that "[a] shingle in an 'unsealed' condition is not a 'direct physical loss' under the Hayes[es's] homeowner's policy, absent evidence the shingle was sealed prior to the storm"; the Hayeses' expert evidence "regarding the cause of the unsealed shingles is conclusory and not probative"; and, "as a matter of public policy, unsealed shingles should not be considered" a direct physical loss. USAA concludes its discussion of its first issue as follows:

> Because unsealed shingles alone without proof the shingle was unsealed by wind are not [a direct physical loss], there is no breach of contract and, because there is no breach of contract, the Hayes[es] cannot recover the $20,000 awarded them. Furthermore, in the absence of any claim for which attorney's fees may be recovered, the Hayes[es] are not entitled to attorney's fees.

In response, the Hayeses first argue that because USAA has not, in its appellate brief, challenged (1) the jury's findings that USAA, in addition to its failure to comply with the insurance policy, also violated the Texas Insurance Code and (2) the jury's award of $20,000 for actual damages, the trial court's judgment,

---

[5] *See* TEX. R. CIV. P. 329b(c).

which is based in part on these findings and award, should be affirmed. *See Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 680–81 (Tex. App.—Houston [1st Dist.] 2002, no pet.) ("[A]ppellant must attack all independent bases or grounds that fully support a complained-of ruling or judgment.").

In Question 1A of its charge, the trial court asked the jury whether USAA had failed "to comply with the insurance policy with respect to the claim [of the Hayeses] for roof, garage door, and other exterior damage?" And the jury answered, "yes." However, the trial court, in Question 4 of its charge, further asked the jury whether USAA had "engaged in any unfair or deceptive act or practice that caused damages" to the Hayeses. And the jury specifically found that USAA had

- failed "to attempt in good faith to effectuate a prompt, fair, and equitable settlement" of the Hayeses' "claim when USAA's liability had become reasonably clear";

- failed "to promptly provide" to the Hayeses "a reasonable explanation of the basis in the policy, in relation to the facts or applicable law," for USAA's "denial of [their] claim or offer of a compromise settlement of their claim"; and

- refused to pay the Hayeses' "claim without conducting a reasonable investigation with respect to their claim(s)."

In Question 5, which was predicated on an affirmative response to "Question No. 1A or to Question No. 1B or to any part of Question 4," the trial court asked the jury what sum of money would fairly and reasonably compensate the Hayeses

9

for their damages that "resulted from the failure to comply you found in response to Questions Nos. 1A and/*or* 1B, and/*or that were caused by an unfair or deceptive act that you found in response to Question no. 4*." (Emphasis added.) In regard to the first subpart for "[d]amage to the roof, garage door and other exterior damage," the jury answered "$20,000."

The trial court, "based upon the jury's answers to question no. 1A, question no. 1B, question no. 2, question no. 3, *question no. 4*, *question no. 5, the first subpart only*, question no. 6, question no. 9, question no. 11, and question no. 12," then rendered its judgment against USAA and in favor of the Hayeses, awarding them $20,000 in actual damages. (Emphasis added.)

Regardless of the jury's answer to Question 1A, concerning whether USAA had failed to comply with the insurance policy, the jury further found in answer to Question 4, which was not in any way predicated upon an answer to Question 1, that USAA had also committed the three separate violations of the Texas Insurance Code as outlined above. Simply put, these three separate violations of the Texas Insurance Code constitute causes of action separate and apart from the Hayeses' claim against USAA for breach of contract. As such, they provided the Hayeses with three additional grounds of recovery against USAA independent from their breach-of-contract claim. And the jury, in answer to Question 5, awarded the Hayeses damages of $20,000 based on either the failure of USAA to comply with

10

the insurance policy "or" its separate violations of the Texas Insurance Code. Because the trial court did render judgment based upon the jury's answers to Questions 4 and 5, as well as Question 1, USAA, in order to successfully challenge the trial court's judgment, was required to also challenge either the jury's three affirmative findings in regard to Question 4 or its award of actual damages in regard to Question 5. *See Britton*, 95 S.W.3d at 681. Contrary to USAA's assertion in its reply brief, it did not challenge any of these findings in its appellant's brief.[6] Accordingly, we must affirm the portion of the trial court's judgment that it entered based on the jury's answers to Questions 4 and 5. *Id.* Moreover, we note that, contrary to USAA's assertion, the jury's findings that USAA violated the Texas Insurance Code also entitle the Hayeses to recover their attorney's fees. *See* TEX. INS. CODE. ANN. § 541.152 (Vernon Supp. 2015).

---

[6]    Over a month after oral argument and four months after it had filed its reply brief, USAA, "out of the proverbial 'abundance of caution,'" filed a motion to supplement its brief to contend in three additional issues that there is no evidence that USAA failed to compensate the Hayeses "for their garage door and other exterior damage"; because USAA "did not breach the policy," the Hayeses may not recover extra-contractual damages and attorney's fees based on extra-contractual damages; and "[t]he jury's answers to question 4 cannot support the $20,000 award." As noted by the Hayeses, "USAA was aware of the Hayeses' argument and responded to it in a footnote in its reply brief" and USAA did not brief its new issues and arguments. Accordingly, we overrule USAA's motion to supplement its appellant's brief. Regardless, as noted below, the evidence is legally sufficient to support the jury's finding that USAA failed "to comply with the insurance policy with respect to the claim [of the Hayeses] for roof, garage door, and other exterior damage."

Even were we to assume that USAA's contention that there is no evidence to support the jury's answer to Question 1A encompasses a challenge to the jury's answers to Questions 4 and 5, ample evidence supports the jury's finding that USAA failed to comply with the policy "with respect to the claim [of the Hayeses] for roof, garage door, and other exterior damage."

In response to the merits of USAA's argument that there is no evidence that the Hayeses suffered "a direct physical loss with respect to unsealed shingles," they assert that USAA "itself determined that the unsealed shingles on the Hayeses' roof were a covered loss" and the eyewitness testimony of the Hayeses, expert testimony, and other evidence support the jury's finding that USAA failed to comply with the policy.

We review a trial court's JNOV ruling under a legal-sufficiency standard. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) ("[T]he test for legal sufficiency should be the same for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review."). A trial court may disregard a jury's verdict and render a JNOV if there is no evidence to support the jury's findings or if a directed verdict would have been proper. TEX. R. CIV. P. 301; *Tiller v. McLure*, 121 S.W.2d 709, 713 (Tex. 2003).

When, as here, an appellant attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, it must

12

demonstrate that no evidence supports the finding. *Examination Mgmt. Servs., Inc. v. Kersh Risk Mgmt., Inc.*, 367 S.W.3d 835, 839 (Tex. App.—Dallas 2012, no pet.). We will sustain a legal-sufficiency or "no-evidence" challenge if the record shows one of the following:  (1) a complete absence of evidence of a vital fact; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810.

In conducting a legal-sufficiency review, a "court must consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it." *Id*. at 822.  The term "inference" means:

> In the law of evidence, a truth or proposition drawn from another which is supposed or admitted to be true. A process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts, or a state of facts, already proved. . . .

*Marshall Field Stores, Inc. v. Gardiner*, 859 S.W.2d 391, 400 (Tex. App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.) (internal quotations omitted).  "For a jury to infer a fact, it must be able to deduce that fact as a logical consequence from other proven facts." *Id*.

If there is more than a scintilla of evidence to support the challenged finding, the finding must be upheld. *Formosa Plastics Corp. USA v. Presidio Eng'rs &*

13

*Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). "[W]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (internal quotations omitted). However, if the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so. *City of Keller*, 168 S.W.3d at 822. "A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement." *Id*.

Under the heading, "Perils Insured Against," the insurance policy provides that USAA will "insure against risk of direct loss to property described in Coverages A and B only if that loss is *a physical loss to property*." (Emphasis added.) Coverage A provides for insurance for the Hayeses' home, and the parties do not dispute that the insurance policy covers the Hayeses' home. We note that the rules governing interpretation of contracts, in general, apply to interpreting insurance policies. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's, London*, 327 S.W.3d 118, 126 (Tex. 2010). And when construing an insurance policy, a court's primary concern is to give effect to the written expression of the parties' intent. *Mid–Continent Cas. Co. v. Global Enercom Mgmt., Inc*., 323 S.W.3d 151, 154 (Tex. 2010). Here, the Hayeses do not dispute that they had the burden to

prove by a preponderance of the evidence that they suffered a direct physical loss to recover on their breach-of-contract claim.

In regard to the Hayeses' assertion that USAA "itself determined that the unsealed shingles" on their "roof were a covered loss," we note that Lisa Thompson, USAA's corporate representative, stated that USAA did in fact "make a decision to provide coverage or to pay . . . to seal the shingles" and USAA agreed to pay to fix the unsealed shingles. She agreed that USAA "is not [in] business to pay for uncovered damages but compromises can be made on claims." And Jack Berke, a USAA claims adjuster, was asked, "as a corporate representative of USAA, that everything that was allowed in every single one of the estimates sent to my client with a check—that those items that were in those estimates were considered covered by USAA?" Berke answered, "Yes, when we issued payment, we were allowing for those items."

Mr. Hayes testified that he knew that Hurricane Ike had damaged his roof because the damage was clearly visible right after the storm. From the ground, he could "see the roof," and it was "obvious" that "the shingles were out of place after the storm. [He] didn't have to go up there to see that." Mr. Hayes noted that "[y]ou could see the shingles were not sealed like they should have been. You could tell they were not sealed." He explained, "[a]ll of the roof was real wavy looking." And it was "wavy in its entirety. Front[,] backsides[,] ends, the whole

15

roof, you could tell that it had been compromised by the wind." Mr. Hayes also noted that after the storm, the shingles "were not seated[,] not sealed like they should have been."

Mr. Hayes further testified that when he went to the county tax appraisal office to protest his property taxes in 2008 prior to Hurricane Ike, he had no complaint about the roof because he did not have any roof problems. However, after Hurricane Ike, he met with Brinkman Roofing and Larry Wilsford, Jr., a general contractor, and both informed him that his roof needed to be replaced. Regardless, USAA did not pay to replace his roof, did not pay him to replace ventilators on the roof that had been "dinged up and bent" because of the storm, and never told him that it was denying any part of his claim.

Mrs. Hayes testified that when the Hayeses purchased the house before Hurricane Ike, she did not see anything that indicated that the roof needed to be replaced. However, after the hurricane, she noticed that the roof looked "wavy." And Mrs. Hayes explained that although the roof looked flat in certain photographs admitted into evidence, the roof in fact had "kind of a wavy appearance" after the storm.

Cynthia Melena, the first USAA adjuster to inspect the Hayeses' roof after Hurricane Ike, testified that she had a conversation with Captain Kenyon of Brinkman. Although she disagreed with Kenyon, he told her that wind from the

hurricane had damaged the Hayeses' roof. Also, Melena wrote in her report, "Roofer says this is wind damage; I said it is not." And other USAA documents contain statements that Kenyon had told Mr. Hayes that the only way that the shingles could have been lifted and become unsealed was from the hurricane's winds and the roof needed to be replaced.

Although the four USAA adjusters that inspected the Hayeses' roof opined that it had not been damaged by wind, Peter Weakly, the fourth USAA adjuster, did state that "40-60%" of the shingles on the roof were "lifted" and "not sealed." Captain Kenyon told Mr. Hayes that the wind had caused the shingles to unseal. And Stephen Taylor, the second USAA adjuster that inspected the roof, conceded that a roof shingle can be lifted by wind without causing any creasing or tearing to the shingle.

Finally, when Mark Kubena, USAA's expert, was asked if he saw any damage to the Hayeses' roof "indicative of winds," he, referring to photographs admitted into evidence, answered, "there's a ridge shingle that was damaged here and there's one that's damaged here. So there are some—there is a ridge shingle that was damaged on this roof slope. So we did observe that. And we observed it again right here (indicating)." At the point where he indicated that the greatest wind speed affected the roof, Kubena, stated, "So right on this roof corner—again, where you should anticipate seeing the highest wind speeds—we found an

17

unsealed shingle here (indicating) and we found some damage to the ridge right here. So we did find it here."

In sum, USAA's own corporate representatives agreed that the unsealed shingles on the Hayeses' roof constituted a covered claim. Before Hurricane Ike, the Hayeses had no problems with their roof, and it did not need to be replaced. However, after the storm, the roof was "wavy in its entirety," one could tell by looking at it that "it had been compromised by the wind," and it was "obvious the shingles were out of place after the storm." Kenyon told Mr. Hayes that the only way for the shingles to have become lifted and unsealed was due to wind damage and the roof needed to be replaced. And Kubena, USAA's own expert, admitted to seeing damage to shingles on the Hayeses' roof "indicative of winds." Although professional roofers had informed Mr. Hayes that his roof needed to be replaced, Mr. Hayes noted that, as of the time of trial, USAA had not paid to replace his roof. In explaining that USAA's insurance policy is a replacement cost policy, Thompson stated,

> In the simplest terms, it means new for old, in the simplest terms. If you have a 30-year-old roof and you have covered damage to that roof, we are going to give you a brand-new roof. We are not going to find 30-year-old material and put that on your roof.

However, the evidence shows that USAA did not pay for new shingles or a new roof; rather it merely paid to have certain shingles re-sealed.

The Hayeses presented ample evidence from which the jury could have reasonably concluded that Hurricane Ike caused a "direct, physical loss" to the Hayeses' roof. *See City of Keller*, 168 S.W.3d at 82 (In conducting legal-sufficiency review, "court must consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it"). Accordingly, we hold that the evidence is legally sufficient to support the jury's finding that USAA failed "to comply with the insurance policy with respect to the claim [of the Hayeses] for roof, garage door, and other exterior damage." We further hold that the trial court did not err in denying USAA's motion for JNOV and rendering judgment on the Hayeses' claim for breach of contract.[7]

USAA further asserts that, "[a]s as matter of public policy, unsealed shingles without evidence of creases, rips, or tears caused by wind or some other covered loss, should not be considered" a direct, physical loss. USAA further asserts that "there are many causes of unsealed shingles such as manufacturing defects, thermal expansion, construction defects, intentional damage, accidental damage, wind damage, the quality or quantity of the sealant, fastener location and depth, decking movement, effects of weathering, improper handling before installation, activation failure due to lack of sunlight or sufficient heating, and wear and tear."

---

[7]  Having held, without considering the testimony of Peter Rabner, the Hayeses' expert, that the evidence is legally sufficient to support the jury's finding in answer to Question 1A, we need not address USAA's assertion that Rabner's opinion testimony is conclusory. *See* TEX. R. APP. P. 47.1.

19

And USAA notes that Peter Rabner, the Hayeses' expert, testified that, generally, if the number of unsealed shingles on an insured's roof is as low as eight percent, the entire roof would need to be replaced. Thus, according to USAA, "an insured need only find a handful of unsealed shingles regardless of the cause, and the insured will argue they are now entitled to a new roof, especially if they wait until after a wind storm to report these unsealed shingles."

We first note that Rabner testified about the percentage of unsealed shingles on a roof requiring roof replacement in reference to a USAA expert report regarding such replacement. Second, in regard to USAA's policy argument, we note that USAA, as an insurer, is in the best position to determine whether a roof has an unacceptable number of unsealed shingles before writing a policy.

Here, more important, the issue before this Court is simply whether legally-sufficient evidence supports the jury's answer to Question 1A. And the jury was presented with conflicting evidence as to whether wind can cause roof shingles to unseal and whether wind from Hurricane Ike caused damage to the Hayeses' roof such that they needed a roof replacement. Given the conflicting evidence, the jury was free to credit evidence in favor of the Hayeses and discredit evidence in favor of USAA. *See City of Keller*, 168 S.W.3d at 822.

We overrule USAA's first issue.

**Court Costs**

In its second issue, USAA argues that the trial court erred in "including a specific amount of costs," namely $56,421.65, in its judgment because it should have merely stated which party was responsible for paying costs and allowed the trial court clerk to perform its ministerial duty to assess the amount of costs. In its third issue, USAA argues that the trial court's award of $56,421.65 in costs to the Hayeses is "grossly excessive" because "[i]temized entries in taxable court costs indicate[] that the Hayes[es] had incurred a mere $802.54 in taxable court costs."

Following the jury's verdict, the Hayeses filed a Motion for Entry of Final Judgment, requesting $56,421.65 in taxable court costs, and the trial court awarded them this amount in its judgment. Subsequently, USAA filed a Motion to Modify Judgment and Re-tax Costs, asking the trial court to enter a new judgment removing the amount of costs. USAA also asserted that no evidence supports the trial court's award of $56,421.65 in court costs to the Hayeses and they, at most, should be awarded only $802.54 for costs. The Hayeses responded that they are entitled to recover costs in the amount of at least $46,855.69, and they attached to their response invoices in support of this assertion. The trial court did not rule on USAA's Motion to Modify Judgment and Re-tax Costs.

Generally, a successful party to a lawsuit is entitled to recover its court costs and fees incurred during the lawsuit. TEX. R. CIV. P. 131. Whether a party is the

21

"successful" party and entitled to costs is determined by the court, and the taxing or tabulation of costs is determined by the clerk. *Wood v. Wood*, 320 S.W.2d 807, 812 (Tex. 1959); *Madison v. Williamson*, 241 S.W.3d 145, 158 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). "The court may, for good cause, to be stated on the record, adjudge the costs otherwise than as provided by law or these rules." TEX. R. CIV. P. 141. To ensure full recovery of its costs, the successful party must apprise the clerk of all costs incurred and may do so by presenting a record of its costs either before or after the judgment is entered. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.007(a) (Vernon 2015); *Madison*, 241 S.W.3d at 158; *Varner v. Howe*, 860 S.W.2d 458, 466 (Tex. App.—El Paso 1993, no writ). The successful party may also apprise the clerk of its costs by filing a motion to re-tax costs in the court where the costs accrued. *Wood*, 320 S.W.2d at 813; *Reaugh v. McCollum Expl. Co*., 140 Tex. 322, 167 S.W.2d 727, 728 (Tex. 1943). Because the taxing of costs is a ministerial duty of the clerk, the motion may be filed even after the case has been disposed of on appeal, so long as it is filed before the mandate issues and the costs are paid. *Reaugh*, 167 S.W.2d at 728; *Operation Rescue-Nat'l v. Planned Parenthood of Hous. & Se. Tex., Inc*., 937 S.W.2d 60, 87 (Tex. App.—Houston [14th Dist.] 1996), *modified on other grounds*, 975 S.W.2d 546 (Tex. 1998). The allocation of costs is a matter for the trial court's discretion and cannot be overturned on appeal unless the trial court abused its discretion.

*Univ. of Hous.-Clear Lake v. Marsh*, 981 S.W.2d 912, 914 (Tex. App.—Houston [1st Dist.] 1998, no pet.).

In response to a request for an award of costs, the trial court's role is to adjudicate which party is to bear the costs of court, not to determine the correctness of specific items. *See Reaugh*, 167 S.W.2d at 728; *Pitts*, 23 S.W.3d at 417. The judgment should not state the amount taxed as costs, but only that costs are awarded against a certain party. *See Pitts*, 23 S.W.3d at 417. Accordingly, we hold that the trial court erred in awarding the Hayeses a specific amount of court costs in its judgment.

We sustain USAA's second issue.

We do not, however, have jurisdiction to address USAA's third issue, i.e., its argument that the trial court's award of $56,421.65 in costs to the Hayeses is "grossly excessive." *See Reaugh*, 167 S.W.2d at 728 (holding motion to re-tax costs should be filed in court where costs accrued and, thus, appellate court lacks jurisdiction to re-tax trial court costs).

**Excessive Demand**

In their first and second cross-points, the Hayeses argue that the trial court erred in granting USAA's motion for JNOV and disregarding the jury's award of their attorney's fees because USAA did not conclusively establish its affirmative

23

defense of excessive demand and "[n]o other basis exists for disregarding the jury fee awards."

As noted above, we review a trial court's JNOV ruling under a legal-sufficiency standard. *City of Keller*, 168 S.W.3d at 823. A JNOV may be granted "when the evidence is conclusive and one party is entitled to recover as a matter of law or when a legal principle precludes recovery." *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 15 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

When, as here, an affirmative defense is not submitted to a jury, we review the record to determine whether the defense was conclusively established. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222–23 (Tex. 1992); *Whitney Nat'l Bank v. Baker*, 122 S.W.3d 204, 207 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (reviewing denial of JNOV on affirmative defense not submitted to jury). To the extent that such a ruling is based on a question of law, we review that aspect of the ruling de novo. *See In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994) ("[Q]uestions of law are always subject to de novo review."); *Elliott v. Whitten*, No. 01-02-00065-CV, 2004 WL 2115420, at *3 (Tex. App.—Houston [1st Dist.] Sep. 23, 2004, pet. denied) (mem. op.).

When a trial court has specified the ground upon which it granted a JNOV, an appellant need only challenge the ground relied upon by the trial court. *Edascio, L.L.C. v. NextiraOne L.L.C.*, 264 S.W.3d 786, 795 (Tex. App.—Houston

[1st Dist.] 2008, pet. denied). However, an appellee may assert on appeal any other grounds that it alleged in its motion for JNOV, but were not relied upon by the trial court, to attempt to vitiate the jury's verdict. *Id.*; *see also* TEX. R. APP. P. 38.2(b); TEX. R. CIV. P. 324(c).

"A creditor who makes an excessive demand upon a debtor is not entitled to attorney's fees for subsequent litigation required to recover the debt," even if it prevails in its suit. *Findlay v. Cave*, 611 S.W.2d 57, 58 (Tex. 1981); *Triton 88, L.P. v. Star Elec., L.L.C.*, 411 S.W.3d 42, 65 (Tex. App.—Houston [1st Dist.] 2013, no pet.). A demand is not excessive simply because it is greater than the amount eventually awarded by the fact finder. *Findlay*, 611 S.W.2d at 58; *Panizo v. Young Men's Christian Ass'n of Greater Hous. Area*, 938 S.W.2d 163, 169 (Tex. App.—Houston [1st Dist.] 1996, no pet.) (unliquidated demand of $125,000 not excessive even though jury awarded only $1,000). However, "a claim for an amount appreciably greater than that which a jury later determines is actually due . . . may indeed be some evidence of an excessive demand." *Findlay*, 611 S.W.2d at 58. And "it may be very persuasive evidence" when a claim is liquidated. *Id.*; *Tonkin v. Amador*, No. 01-07-00496-CV, 2009 WL 1424724, at *5 (Tex. App.—Houston [1st Dist.] May 21, 2009, no pet.); *see also* BLACK'S LAW DICTIONARY (8th ed. 2004) ("liquidated debt" is "[a] debt whose amount has been determined by agreement of the parties or by operation of law"). Nevertheless, "it

25

cannot be the only criterion for determination, especially where the amount due is unliquidated." *Findlay*, 611 S.W.2d at 58 ("Certainly one can conceive of circumstances in which a demand for an unliquidated sum would have to be characterized as excessive, and attorney's fees denied."); *Outdoor Sys., Inc. v. BBE, L.L.C.*, 105 S.W.3d 66, 73 (Tex. App.—Eastland 2003, pet. denied); *Panizo*, 938 S.W.2d at 169 (unliquidated demand not excessive).

"The dispositive question in determining whether a demand is excessive is whether the claimant acted unreasonably or in bad faith." *Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.*, 176 S.W.3d 307, 318 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); *see also Alford v. Johnston*, 224 S.W.3d 291, 298 (Tex. App.—El Paso 2005, pet. denied). Further, application of the excessive-demand doctrine is limited to situations in which a creditor has refused a tender of the amount "actually due" or has clearly indicated to the debtor that such a tender would be refused. *Findlay*, 611 S.W.2d at 58; *Hernandez v. Lautensack*, 201 S.W.3d 771, 777–78 (Tex. App.—Fort Worth 2006, pet. denied).

Here, the Hayeses first argue that USAA waived its excessive-demand defense because it failed to submit a question to the jury and obtain a finding on its defense. USAA argued to the trial court that its excessive-demand defense is "a question of law for the [trial court] to resolve." And it points out that the Hayeses

26

themselves argued to the trial court that the question was a "decision for the [trial court] after the jury comes back with the verdict."

To preserve an excessive-demand challenge, a debtor is required to (1) plead excessive demand as an affirmative defense to the claim for attorney's fees and (2) "request and obtain findings of fact regarding the essential elements of excessive demand." *Dror v. Mushin*, No. 14-12-00322-CV, 2013 WL 5643407, at *8 (Tex. App.—Houston [14th Dist.] Sept. 26, 2013, pet. denied) (mem. op.); *see Kurtz v. Kurtz*, 158 S.W.3d 12, 21 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (excessive demand constitutes affirmative defense); *see, e.g.*, *Wayne v. A.V.A. Vending, Inc.*, 52 S.W.3d 412, 414, 418–19 (Tex. App.—Corpus Christi 2001, pet. denied) (affirming trial court's denial of attorney's fees based on jury finding of excessive demand).

The record shows that USAA, in its Second Amended Answer, pleaded the affirmative defense of excessive demand. However, it did not request and obtain any jury findings on its defensive theory. Thus, our analysis of USAA's defense "will be limited to its presentation as a ground" for JNOV. *See Bates v. Randall Cty.*, 297 S.W.3d 828, 833 & n.7 (Tex. App.—Amarillo 2009, pet. denied); *Triumph Trucking, Inc. v. S. Corp. Ins. Mgrs., Inc.*, 226 S.W.3d 466, 470 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). That is, USAA must have conclusively established in the trial court that the Hayeses made a demand that was

excessive and in bad faith as a matter of law. *See Oyster Creek Fin. Corp.*, 176 S.W.3d at 318 (upholding jury's finding demand not excessive); *see also Dror*, 2013 WL 5643407, at \*8 (considering whether defendants, who did not obtain jury finding on excessive-demand defense, established defense as matter of law).

The Hayeses next assert, as they did in the trial court, that USAA did not establish as a matter of law that they made a "demand" upon it. The Hayeses assert that their statutory pre-suit notice letter, which USAA attached to its motion for JNOV and upon which it solely relies, does not constitute a "demand." *See* TEX. INS. CODE ANN. § 541.154(a) (Vernon 2009); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(Vernon 2015).

Under the Texas Insurance Code, "[a] person seeking damages in an action against another person . . . must provide written notice to the other person not later than the 61st day before the date the action is filed." TEX. INS. CODE ANN. § 541.154(a). The notice must advise the recipient of "the specific complaint" and "the amount of actual damages and expenses, including attorney's fees reasonably incurred in asserting the claim against the other person." *Id*. § 541.154(b). The purpose of the notice requirement is to "discourage litigation and encourage settlements of consumer complaints." *Hines v. Hash*, 843 S.W.2d 464, 469 (Tex. 1992). Pre-suit notice provides the defendant insurer an opportunity to make a settlement offer. *See* TEX. INS. CODE ANN. § 541.156 (Vernon 2009); *see also In*

28

*re Behr*, No. 04-05-00895-CV, 2006 WL 468001, at *3 (Tex. App.—San Antonio Mar. 1, 2006, no pet.) (mem. op.).  If a plaintiff fails to comply with the 60-day notice requirement prior to filing suit, "abatement of the action for the statutory notice period is more consistent with the purpose of notice than dismissal." *Hines*, 843 S.W.2d at 469; *see also* TEX. INS. CODE ANN. § 541.155 (abatement).

Here, the Hayeses, on October 1, 2009, attached to their Original Petition and served on USAA a "NOTICE LETTER," which states, in pertinent part, as follows:

> Undoubtedly, you [USAA] are aware of your liability to my clients under the Texas Insurance Code, which specifically covers unfair settlement claims.  Specifically, you are liable to [the Hayeses] jointly and individually for the following violations of the Texas Insurance Code § 541.060:
>
> [list of claims]
>
> Furthermore, the delay in payment to [the Hayeses] is also in violation of Texas Insurance Code §542.055, et seq., thus triggering liability on your part to pay the amount of the claim, plus damages consisting of eighteen percent . . . per annum of the amount of the claim, along with prejudgment interest and reasonable attorney's fees.
>
> . . . .
>
> Accordingly, on behalf of [the Hayeses], demand is hereby made that within sixty . . . days from your receipt of this correspondence, the following amounts be paid:
>
> 1. $ 323,000.86 in economic damages;
>
> 2. $ 50,000 in mental anguish damages; and
>
> 3. $ 248,667.24 for expenses, including attorney's fees, which you should note will increase as we prepare this case for trial.

This demand is made in the spirit of compromise. According to our analysis, this demand represents a tremendous savings to you[,] given your potential exposure under the Texas Insurance Code. Thus, we hope this demand is viewed as a good faith and conservative effort on our part to expeditiously resolve this potential litigation on amicable terms.

If [the Hayeses'] claim is not paid within sixty . . . days from the receipt of this correspondence, we would expect to recover actual damages, along with damages for mental anguish, prejudgment interest, attorney's fees and breach of the duty of good faith and fair dealing . . . . In addition, please be aware that recovery in the form of treble damages and additional penalties will also be sought.

. . . .

As [the Hayeses] are anxious to have this matter resolved promptly, we trust that you will immediately respond in writing, to this formal demand letter. . . .

If you have any questions regarding this matter or need additional information, please feel free to contact this office. . . .

In the letter, which is titled a "Notice," the Hayeses expressly provide notice to USAA that they are seeking damages against it under the Insurance Code. *See* TEX. INS. CODE ANN. § 541.154(a). And the letter advises USAA of the Hayeses specific complaints and the amount of actual damages, expenses, and attorney's fees sought. *See id*. § 541.154(b). USAA, in its motion for JNOV, acknowledged that the Hayeses' notice letter was "sent pursuant to Texas Insurance Code chapter 541." USAA, in its response to the Hayeses' brief on excessive demand, further asserted in the trial court that, "presumably," the "purpose" of the Hayeses' letter was "[c]ompliance" with the statute "because it is titled 'NOTICE LETTER.'" And the letter constitutes a "statutory formality" and "a prerequisite to filing suit."

The purpose of the statutory notice requirement is to "encourage settlement" and to give an insurer an opportunity to make a "settlement offer." *See* TEX. INS. CODE ANN. § 541.156; *Hines*, 843 S.W.2d at 469. The Hayeses, who are the insureds, emphasize that their notice letter represents their attempt to draw USAA into a settlement. They expressly state in their letter that it is "offered in the spirit of compromise." Although the word "demand" appears, the letter also states that the Hayeses "hope this demand is viewed as a good faith and conservative effort on [their] part to expeditiously resolve this potential litigation on amicable terms." Indeed, as the Hayeses assert, the letter "contains no expression that it is a 'take-it-or-leave-it' demand." Rather, it invites further discussion.

In *McAlister v. Hatbreeze Props., L.L.C.*, in contrast to the instant case, the plaintiff's letter to the defendants presented a clear ultimatum:

> [T]his letter shall serve as a demand that you make arrangements to pay the full amount of $192,000.00 plus attorney's fees of $2,500.00 for handling this matter within thirty (30) days of this letter. In the event you fail to pay the amount, my client will be forced to file suit against you . . . for breach of contract.

No. 02-11-00060-CV, 2012 WL 579436, at *8 (Tex. App.—Fort Worth Feb. 23, 2012, no pet.) (mem. op.). The Fort Worth Court of Appeals concluded that the "language requiring [defendants] to pay the full $192,000 or else [the plaintiff] would file suit" indicated a "clear intent" to refuse anything other than full payment. *Id.*

USAA argues that the Hayeses' notice letter constitutes a "demand" as a matter of law and not an "offer of settlement" because the Hayeses, in their notice letter, do not offer to relinquish any rights. "In an offer of settlement or compromise, a party concedes some right to which he believes he is entitled in order to bring about a mutual settlement." *Vinson Minerals, Ltd. v. XTO Energy, Inc.*, 335 S.W.3d 344, 351 (Tex. App.—Fort Worth 2010, pet. denied). Here, the Hayeses, in their notice letter, claim that they are entitled to "treble damages" against USAA for certain violations of the Texas Insurance Code, and they offer to "sav[e]" USAA this "potential exposure." Thus, the Hayeses did offer to concede a right to which they believed they were entitled.

A proposition is established as a matter of law when a reasonable fact finder can draw only one conclusion from the evidence presented. *City of Keller*, 168 S.W.3d at 814–16. We conclude that a reasonable fact finder could infer that the Hayeses' notice letter constituted either a demand or an initial offer and attempt to draw USAA into settlement discussions. Thus, the notice letter, on which USAA exclusively relies, is insufficient to establish a demand as a matter of law. *See id.*

We conclude that USAA did not conclusively establish its excessive-demand defense. Accordingly, we hold that the trial court erred in reducing the Hayeses' award of attorney's fees to "$0, reflecting the [c]ourt's finding of excessive demand," and granting USAA a JNOV on this ground. *See Beckman*, 305 S.W.3d

at 15 (JNOV may be granted "when the evidence is *conclusive* and one party is entitled to recover as a matter of law or when a legal principle precludes recovery" (emphasis added)).

USAA asserts, however, that alternate grounds support the trial court's JNOV. *See Edascio*, 264 S.W.3d at 795 (appellee may assert on appeal grounds "that it alleged in its motion for judgment notwithstanding the verdict, but were not relied upon by the trial court, to attempt to vitiate the jury's verdict"). First, USAA argues that the testimony of the Hayeses' counsel, R. Cashiola, constituted no evidence of reasonable and necessary attorney's fees because his testimony reflects that he "increased his hourly rate to recover certain costs," such as overhead, expert witness fees, and transcript fees, which "are not recoverable as a matter of law." Second, USAA argues that Cashiola's testimony constituted no evidence of attorney's fees because he did not segregate recoverable from unrecoverable attorney's fees.

Again, as noted above, we will sustain the granting of a JNOV based on "no evidence" when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the trial court is barred by the rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is not more than a scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *City of Keller*, 168

33

S.W.3d at 810. And again, to the extent that the trial court's ruling is based on a question of law, we review that aspect of the ruling de novo. *See In re Humphreys*, 880 S.W.2d at 404; *Elliott*, 2004 WL 2115420, at \*3.

In regard to USAA's assertion that Cashiola "increased his hourly rate to recover certain costs," we note that "expenses incurred in prosecuting or defending a suit are not recoverable as costs . . . unless recovery of those items is expressly provided for by statute, is available under equitable principles, or is expressly provided for by contract." *Transcon. Realty Inv'rs, Inc. v. Orix Capital Mkts. L.L.C.*, No. 05-14-00588-CV, 2015 WL 3751392, at \*10 (Tex. App.—Dallas June 16, 2015, pet. denied) (mem. op.); *see also Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 425 (Tex. 2008) ("overhead" expenses include administration, supervision, and office services); *Strauss v. Cont'l Airlines, Inc.*, 67 S.W.3d 428, 440 n.7 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ("overhead" expenses include "office rent, salaries to employees, payroll taxes, and other fixed costs of doing business"). And, generally, in Texas, "expert witness fees are not recoverable as costs of litigation." *Bundren v. Holly Oaks Townhomes Ass'n*, 347 S.W.3d 421, 440 (Tex. App.—Dallas 2011, pet. denied).

Here, Cashiola testified that the Hayeses, in bringing their case, incurred "reasonable and necessary" attorney's fees of $335,817.75, and he explained some of the factors supporting those fees. *See Arthur Andersen & Co. v. Perry Equip.*

34

*Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). The trial court also admitted into evidence Cashiola's "Attorney Fee Recap," which is an itemized billing of the work he and other attorneys performed in the Hayeses' case since its inception in July 2009. The Recap does not expressly contain any amounts attributed to overhead, expert witness fees, or transcript fees. In the portion of the record of which USAA complains, Cashiola testified as follows:

| [Counsel for Hayeses]: | And that figure [$335,817.75] does not include expenses for experts or for filings or serving or any expenses related to this claim? |
|---|---|
| [Cashiola]: | No. There are elements that the law allows for us to recover, such as taxable court costs if we prevail; but the experts, Craig, copies from court reporters, none of that. That all comes out of this rate. It comes out of the overhead. |

. . . .

| [Counsel for Hayeses]: | Now, when coming to your conclusion that the fees represented on there are reasonable and necessary, what factors did you look at that have been laid out in Texas to look at? |
|---|---|
| [Cashiola]: | . . . [F]irst of all, we're not recovering—or Mr. Mostyn is having to pay overhead out of this rate that the law doesn't give us. And I have to compare these rates to other lawyers and—who work for insurance companies, and their rate structures aren't like this where everything is at risk. They get to bill for an hourly rate of, say, 225 an hour; and then separately they get to bill for their expenses. And so if I'm paid $225 an hour |

and my opposing counsel—or if the jury decides a fair rate for me is $225 an hour and my opposing counsel is getting $225 an hour, the insurance company comes out ahead because they—their lawyers are paid more than us because we've got to turn around now and pay Craig, our experts and the overhead and everything else that—well, not overhead; but—well, we have to pay that. But that wouldn't be included in what a defense lawyer would get to bill an insurance company. So they're getting their 225 an hour net of all these expenses in the case. We are not. We do not get to ask for that. So our rates are always going to be higher—quote, unquote, higher in dollar amount than what lawyers who have arrangements where their hourly rate is paid separately from their expenses in the case.

The record reveals that Cashiola expressly testified that the attorney's fees at issue did not include expenses for expert witnesses or transcripts. He explained that the law firm must pay its overhead out of the revenues it generates, that is, from the fees its attorneys earn. "[H]ourly market rates" for attorneys "necessarily take into consideration such factors as salaries, overhead, the costs of support personnel, and incidental expenses." *AMX Enters., L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 517–18 (Tex. App.—Fort Worth 2009, no pet.); *see also Tex. Comm. on Prof'l Ethics*, Op. 594, 2010 WL 1026289 (Feb. 2010) ("[W]hen a client has engaged a lawyer to provide legal services for a fee, charging, collecting or recouping additional charges for general office overhead is prohibited because

36

the client may reasonably be expected to understand that the lawyer's general office overhead expenses are subsumed within the agreed-upon fee (whether determined on an hourly, flat fee, contingent fee or other basis)."). Cashiola further explained that his rates are generally higher, as compared to an attorney representing an insurer, because his firm's cost of doing business is higher and represents greater risk. Nothing in the complained-of testimony suggests that Cashiola "inflat[ed]" his rates in this case in order to recover overheard, expert witness fees, or transcript fees.

In regard to USAA's assertion that the Hayeses failed to segregate their recoverable from unrecoverable attorney's fees, it complains that when Cashiola was questioned about fee segregation, he "never identified nor segregated the time and fees related to prosecuting" claims for which attorney's fees were not recoverable and offered only the following "vague testimony":

> I mean, we're having to prove essentially the same thing in each case, damage-wise and so forth. But they're alternative causes of action for the most part, and we have a duty to our client to put in front of you every proper cause of action that the law allows. And so we work on them sort of together because they're all—they all have common— common denominators.
>
> But the Supreme Court, who we must obey, has said, "We don't care if they're all sort of intertwined like that in terms of your work. We want you to segregate the common law, and you can estimate a percentage." And because they're so intertwined, the percentage I *always* estimate is five percent.

(Emphasis added.)

USAA asserts that Cashiola "did not do what Texas law requires and 'parse the work into component tasks' and examine them to identify which are related to recoverable claims." Rather, "[t]here was no indication he looked at specific pleadings, motions, or discovery, let alone discrete parts thereof, to determine whether they related to claims for which attorney's fees were recoverable."

"Texas law [does] not allow[] for recovery of attorney's fees unless authorized by statute or contract." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). "As a result, [attorney's] fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not." *Id*. at 311. The need to segregate attorney's fees is a question of law, and the extent to which certain claims can or cannot be segregated is a mixed question of law and fact. *Id*. at 312–13; *CA Partners v. Spears*, 274 S.W.3d 51, 81 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). The party seeking to recover attorney's fees carries the burden of demonstrating that fee segregation is not required. *See Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 455 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

"[I]f any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Chapa*, 212 S.W.3d at 313. "Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable

38

claim that they are so intertwined that they need not be segregated." *Id.* Where segregation is required, attorneys are not required to "keep separate time records when they drafted the fraud, contract, or DTPA paragraphs of [the] petition." *Id.* at 314. Rather, "an opinion [will] suffice[] stating that, for example, 95 percent of their drafting time would have been necessary even if there had been no fraud claim." *Id.*; *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 506 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

Here, the Hayeses brought claims against USAA for breach of contract, breach of the common-law duty of good faith and fair dealing, common-law fraud, and violations of the Texas Insurance Code. And they sought attorney's fees for each claim. Although the Hayeses prevailed on their claims for breach-of-contract and violations of the Insurance Code, upon which they are entitled to recover attorney's fees, they are precluded by law from recovering attorney's fees on their common-law claims. Thus, the Hayeses were required to either segregate their recoverable from their unrecoverable attorney's fees or demonstrate that segregation was not required because discrete legal services advanced both recoverable and unrecoverable claims. *See Chapa*, 212 S.W.3d at 313–14; *Nguyen*, 229 S.W.3d at 455.

The evidence presented at trial concerned the totality of the fees for work performed by up to eight attorneys on all of the Hayeses' claims from the inception

of the litigation to the date of trial. Cashiola testified that he was required to segregate the Hayeses' "common-law" claims. However, "because they're so intertwined, the percentage [he] *always* estimate[s] is five percent." (Emphasis added.)

Again, "[i]ntertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Chapa*, 212 S.W.3d at 313 ("It is certainly true that [the plaintiff's] fraud, contract, and DTPA claims were all 'dependent upon the same set of facts or circumstances,' but that does not mean they all required the same research, discovery, proof, or legal expertise."). Cashiola did not, however, testify regarding any of the discrete legal services in this case. *See Clearview Props., L.P. v. Prop. Tex. SC One Corp.*, 287 S.W.3d 132, 144 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (examining "discrete pieces of legal work conducted in this litigation").

In regard to segregating their attorney's fees, the Hayeses assert that Cashiola opined "that five percent of the attorney's fees were attributable to [their] common law causes of action." However, the record reveals that Cashiola did not opine regarding the fees attributable to the Hayeses' specific claims in this case. Rather, he testified that he simply "always" estimates "five percent." Although an opinion stating that, "for example, 95 percent of . . . drafting time would have been

necessary even if there had been no fraud claim" will suffice, Cashiola did not demonstrate that he took into account any of the actual work performed or the claims made in the Hayeses' case. *See Chapa*, 212 S.W.3d at 314 & n.83; *see also 7979 Airport Garage, L.L.C.*, 245 S.W.3d at 506 (holding segregation of fees requires some consideration of component tasks). A party seeking attorney's fees "must show that the fees were incurred while suing the party sought to be charged with the fees on a claim that allows recovery of the fees." *Panizo*, 938 S.W.2d at 170–71. We conclude that the Hayeses did not properly segregate their recoverable from unrecoverable attorney's fees.

However, unsegregated attorney's fees constitute "some evidence of what the segregated amount should be." *Chapa*, 212 S.W.3d at 314; *see Arrow Marble, LLC v. Estate of Killion*, 441 S.W.3d 702, 709 (Tex. App.—Houston [1st Dist.] 2014, no pet.). And when there is some evidence in support of an award of attorney's fees, as here, a factfinder does not have the discretion to award no fees. *See Estate of Killion*, 441 S.W.3d at 709. Rather, remand is appropriate to determine the segregated fee amount due. *Chapa*, 212 S.W.3d at 314 ("[W]hen, as here, it cannot be denied that at least some of the attorney's fees are attributable only to claims for which fees are not recoverable, segregation of fees ought to be required and the jury ought to decide the rest."); *see also A.G. Edwards & Sons,*

41

*Inc. v. Beyer*, 235 S.W.3d 704, 710 (Tex. 2007) (reversing and remanding for new trial on attorney's fees); *Estate of Killion*, 441 S.W.3d at 709.

Because the Hayeses did not properly segregate their recoverable and unrecoverable attorney's fees, we must remand the case to the trial court for a new trial on attorney's fees.

We sustain the Hayeses' first and second cross-points in part.

**Unfair or Deceptive Acts**

In their third cross-point, the Hayeses argue that the trial court erred in disregarding the jury's finding that USAA *knowingly* engaged in unfair or deceptive acts or practices and the jury's corresponding damages award of $30,000 because both the finding and award are material and supported by legally-sufficient evidence. USAA asserts that there is no evidence that it, in regard to violations of the Texas Insurance Code, acted with "actual awareness."

As noted above, the jury, in answer to Question 4 of the trial court's charge, specifically found that USAA had:

- failed "to attempt in good faith to effectuate a prompt, fair, and equitable settlement" of the Hayeses' "claim when USAA's liability had become reasonably clear";

- failed "to promptly provide" to the Hayeses "a reasonable explanation of the basis in the policy, in relation to the facts or applicable law," for USAA's "denial of [their] claim or offer of a compromise settlement of their claim"; and

- refused to pay the Hayeses' "claim without conducting a reasonable investigation with respect to their claim(s)."

Because it found that USAA had engaged in the above unfair or deceptive acts or practices, the jury was required to answer Question 7, which provides,

> Did USAA engage in any such conduct knowingly?
>
> "Knowingly" means actual awareness, at the time of the conduct, of the falsity, deception, or unfairness of the conduct in question. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.
>
> In answering this question, consider only the conduct that you found resulted in damages to Joseph and Joanne Hayes.

And the jury answered "yes."

We note that under the definition of "knowingly," "actual awareness" does not mean that a person merely knew what he was doing. *St. Paul Surplus Lines Ins. Co. v. Dal–Worth Tank Co*., 974 S.W.2d 51, 53–54 (Tex. 1998). Rather, actual awareness requires proof that a person knew that what he was doing was false, deceptive, or unfair. *Id*. at 54. "In other words, a person must think to himself at some point, 'Yes, I know this is false, deceptive, or unfair to him, but I'm going to do it anyway.'" *Id*. Thus, actual awareness constitutes more than conscious indifference to another's rights or welfare. *Id*.

In regard to whether USAA knowingly refused to pay their claim without conducting a reasonable investigation, the Hayeses argue that USAA knew from the first inspection of their roof that many shingles were unsealed because although

43

each adjuster had documented unsealed shingles, it "took USAA eight months to acknowledge that 40 to 60 percent of the shingles" on their "roof were unsealed." The Hayeses also emphasize that during the eight-month period, USAA did not hire "an engineer to examine the roof, even after its adjuster recommended that it do so"; attempt to determine any pattern in the loss of adherence of the shingles; or make a thermal diagram of their roof. Even though USAA was aware that shingles on the roof were unsealed, USAA did "nothing to investigate the cause of the unsealing" and "refused to pay anything for the damage until June 2009." The Hayeses assert that this constitutes at least some evidence that USAA knowingly failed to conduct a reasonable investigation. However, although the record evidence reveals that USAA may not have conducted such an extensive investigation as proposed by the Hayeses, this fact does not support an inference that USAA was actually aware that its investigation in any way constituted false, deceptive, or unfair conduct.

In regard to whether USAA knowingly failed to effectuate a prompt, fair and equitable settlement of the Hayeses' claim, they argue that USAA, by May 2009, knew that its liability had become reasonably clear because it, by then, had agreed that the unsealed shingles on the roof constituted a covered loss under the policy. The Hayeses note that Lisa Thompson, USAA's corporate representative, agreed that USAA had in fact "ma[d]e a decision to provide coverage or to pay . . . to seal

the shingles." They also note that when Jack Berke, USAA's third adjuster, was asked whether USAA had covered items that had been included in estimates that accompanied a payment check, he answered, "Yes, when we issued payment, we were allowing for those items." The Hayeses also cite Plaintiff's Exhibit 23, a letter from USAA to Mr. Hayes detailing USAA's payment to the Hayeses. In its letter, USAA details a replacement cost of $28,473.09, less recoverable depreciation, less non-recoverable depreciation, less a deductible. The stated actual cash value of USAA's proposed total payments to the Hayeses is $24,025.57; subtracting a prior payment of $9,773.90, this left, as of June 8, 2009, a total of $14,251.67 due. The Hayeses assert that "USAA most certainly knew in May 2009 that Mr. Hayes had a replacement cost policy entitling him to receive replacement costs, not repair costs, for his damaged roof" and it "knowingly refused to pay for replacement of the damaged shingles."

Nevertheless, the Hayeses presented no evidence to support an inference that USAA, in not effectuating a prompt, fair, and equitable settlement, was actually aware that it was acting in a false, deceptive, or unfair manner. The evidence upon which the Hayeses rely establishes that USAA in fact agreed to pay for covered losses, but it does not establish that USAA knew that what it was doing was in any way false, deceptive, or unfair. *See St. Paul Surplus Lines Ins.*, 974 S.W.2d at 53–

45

54 (evidence of misconduct not evidence defendant *"knew* it was acting falsely, deceptively, or unfairly toward" appellee).

Finally, in regard to whether USAA knowingly failed to provide the Hayeses with a reasonable explanation of the basis in the policy for USAA's denial of their claim, or its offer of a compromise settlement of their claim, the Hayeses note that although Thompson told the jury that USAA had reached a compromise on the Hayeses' claim, she admitted that USAA did not explain to the Hayeses that a compromise had been reached. Again, however, such evidence does not support an inference that USAA, in not providing the Hayeses with a reasonable explanation of the compromise, was actually aware that it was acting in false, deceptive, or unfair manner. *See id.*

Accordingly, we hold that the trial court did not err in disregarding the jury's answer to Question 7 that USAA *knowingly* engaged in unfair or deceptive acts or practices. Have so held, we need not address the Hayeses' argument that legally-sufficient evidence supports the jury's award of $30,000 in answer to Question 8 of the trial court's charge.

We overrule the Hayeses' third cross-point.

### Interior Damage

In their fourth cross-point, the Hayeses argue that the trial court erred in disregarding the jury's answer to subpart two of Question 5 of the trial court's

46

charge that $5,000 would fairly and reasonably compensate them for damage "to the interior of the[ir] home and garage" because "the jury's answer was neither immaterial nor unsupported by the evidence." USAA argues in part that the jury's answer is immaterial because the jury had already found, in answer to Question 1B, that USAA did *not* "fail to comply with the insurance policy with respect" to the Hayeses' claim "for damage to the interior of the house and garage."

"If a trial court sua sponte disregards a [jury's] finding, the court's action may be upheld only where the disregarded finding is immaterial." *Harris Cty. v. Gibbons*, 150 S.W.3d 877, 885 (Tex. App.—Houston [14th Dist.] 2004, no pet.). A jury finding is immaterial when the trial court should not have submitted the question to the jury and the jury's finding does not apply to the case. *Brown v. Armstrong*, 713 S.W.2d 725, 728 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Also, a trial court may disregard a jury finding when other jury findings render it immaterial. *C & R Transp., Inc. v. Campbell*, 406 S.W.2d 191, 195 (Tex. 1966); *Watson v. Nortex Wholesale Nursery, Inc.*, 830 S.W.2d 747, 750 (Tex. App.—Tyler 1992, writ denied).

Here, the trial court, as noted above, instructed the jury that if it "answered 'Yes' to Question No. 1A, <u>or</u> to Question No. 1B, <u>or</u> to any part of Question 4," then it was to answer Question 5. In Question 5, the trial court asked the jury:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Joseph and Joanne Hayes for their damages, if

any, that resulted from the failure to comply you found in response to Question Nos. 1A and/or 1B, and/or that were caused by an unfair or deceptive act that you found in response to Question No. 4[?]

Consider the following elements of damages, if any, and none other:

> The difference, if any, between the amount paid by USAA to Joseph and Joanne Hayes for their Hurricane Ike damages and *the amount that should have been paid by USAA* to Joseph and Joanne Hayes under the policy.

(Emphasis added.)

In subpart two of Question 5, the jury answered $5,000 for damage to the "to the interior of the home and garage." However, as pointed out by USAA, the jury had already found, in answer to Question 1B, that USAA did not "fail to comply with the insurance policy with respect" to the Hayeses' claim "for damage to the interior of the house and garage." Because the jury found that USAA did not fail to comply with the policy in regard to the Hayeses' claim "for damage to the interior of the house and garage," the jury could not have reasonably concluded that USAA "should have . . . paid" the Hayeses on the claim.

Accordingly, we hold that the trial court did not err in disregarding the jury's answer to subpart two of Question 5 of the trial court's charge that $5,000 would fairly and reasonably compensate them for damage "to the interior of the[ir] home and garage."

We overrule the Hayeses' fourth cross-point.

**Penalty Interest**

In their fifth cross-point, the Hayeses argue that the trial court erred in not awarding them, pursuant to the "Prompt Payment of Claims" subchapter of the Texas Insurance Code, penalty interest of 18 percent a year on their actual damages award because although USAA stipulated at trial that it had "received" from them "all items, statements, and forms required by it to secure final proof of loss on May 19, 2009," it failed to "comply with one or more of the deadlines" contained in the subchapter. *See* TEX. INS. CODE ANN. §§ 542.001–.061, 542.060(a) (Vernon 2009). In response, USAA argues that the Hayeses are not "entitled to interest at 18 percent a year" on their actual damages because they did not submit "in writing" to USAA the proper "notice of claim" as statutorily required. *See id.* § 542.051.

Texas Insurance Code section 542.055, entitled "Receipt of Notice of Claim," provides:

(a)  Not later than the 15th day . . . after the date an insurer receives notice of a claim, the insurer shall:

(1)  Acknowledge receipt of the claim;

(2)  Commence any investigation of the claim; and

(3)  Request from the claimant all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant.

*Id.* § 542.055. "Notice of claim" is defined as "any written notification provided by a claimant to an insurer that reasonably apprises the insurer of the facts relating to the claim." *Id*. § 542.051(4).

Section 542.056 provides,

(a)    Except as provided by Subsection (b) or (d), an insurer shall notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss.

*Id.* § 542.056(a). Also, an insurer must pay a claim not later than 60 days after the date it receives all items, statements, and forms reasonably required from an insured. *See id*. § 542.058(a).

Section 542.060(a) provides for penalty interest, stating,

(a)    If an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney's fees.

*Id*. § 542.060(a).

The trial court, in Question 6 of its charge, asked the jury, "Did USAA fail to notify" the Hayeses "in writing of the acceptance or rejection of their claims by June 10, 2009?" As noted by the Hayeses, June 10, 2009 was the sixteenth business day after May 19, 2009. The jury answered "yes" to Question 6. In its judgment, the trial court did not expressly disregard the jury's answer to Question

6, but it did not award the Hayeses 18 percent penalty interest pursuant to section 542.060. Although the Hayeses, in their Motion to Modify, Correct and/or Reform the Judgment, requested that the trial court award them the penalty interest, it did not rule on their motion.

It is undisputed that the Hayeses did not provide to USAA an actual written notice of their claim. As noted by USAA, at least one Texas court of appeals in discussing the previous version of the "Prompt Payment of Claims" subchapter of the Texas Insurance Code concluded that its "claim-handling periods . . . are triggered by the insurance company's 'receipt of notice of claim.'" *McMillin v. State Farm Lloyds*, 180 S.W.3d 183, 207 (Tex. App.—Austin 2005, pet. denied) (applying former TEX. INS. CODE ANN. art. 21.55). In *McMillin*, the court held that because the insureds presented no evidence that they had provided their insurer with "notice in writing" of their claim, they did not trigger the code's provisions intended to promote the prompt payment of claims. *Id.* at 207–08. And the Hayeses, in their briefing and arguments, have not questioned the reasoning of the court in *McMillin*. Accordingly, we hold that the trial court did not err in not awarding the Hayeses penalty interest on their actual damages pursuant to section 542.060.

We overrule the Hayeses' fifth cross-point.

**Conclusion**

We reverse the portions of the judgment of the trial court awarding the Hayeses court costs in the specific amount of $56,421.65 and reducing the jury's award of attorney's fees to the Hayeses "to $0, reflecting the Court's finding of excessive demand" by the Hayeses. We remand the case to the trial court to address the issue of court costs and conduct a new trial on the issue of the Hayeses' attorney's fees. We affirm the remainder of the judgment of the trial court. We deny USAA's motion to supplement its brief and overrule any other pending motions as moot.

Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Huddle.

Huddle, J., concurring and dissenting.

52